**Josie PAEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1105–83.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 5, 1984.

George Scharmen, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted for the murder of her husband pursuant to V.T.C.A. Penal Code, Sec. 19.02(a)(1) and was sentenced to ten years confinement in the Texas Department of Corrections, probated. She was tried jointly with her co-defendant, Amelia Bazar Pena. The Fort Worth Court of Appeals, pursuant to a transfer under Tex. Rev.Civ.Stat.Ann. art. 1738 (Vernon Supp. 1984), reversed her conviction in an unpublished opinion. *Paez v. State* (Tex.App.— Ft. Worth, No. 2–83–263–CR, delivered November 9, 1983).

We granted the State's Petition for Discretionary Review to determine whether the Court of Appeals erred in holding that Art. 38.22, V.A.C.C.P. required the exclusion of oral statements made by appellant, while in custody, to a child placement worker for the Texas Department of Human Resources. We reverse.

During a lengthy trial, there was much conflicting testimony concerning the manner in which the deceased was shot. Appellant was wounded during the scuffle in which her husband (the deceased) was shot to death by co-defendant Pena. She was taken to Robert B. Green Hospital in San Antonio for treatment. After appellant testified at trial, the State introduced testimony from Patricia Vera, a child placement worker with the Texas Department of Human Resources. Vera worked in protective services dealing with child abuse and child neglect. She had been working with appellant and her children for the five month period immediately prior to the death of appellant's husband. Vera testified to the contents of a conversation she had with appellant while appellant was in the hospital for treatment.

Vera testified that at the time of the conversation in question, appellant had been arrested and was in custody; there

were two uniformed policewomen in the same hospital room with Vera and appellant, and the hospital room was, in effect, a security room. Vera stated that she went to the hospital because appellant was her client. Vera was concerned about the location of appellant's children and whether they had a place to stay. In response to a question from appellant's trial counsel as to whether she had given appellant the "statutory warning" before speaking with her, Vera replied: "Yes, yes, I'm trying to recall because I think we did touch that issue."

The admissibility of Vera's testimony is governed by Art. 38.22, V.A.C.C.P. At the time of the conversation in question in August, 1979, Art. 38.22 V.A.C.C.P., Sec. 3, allowed an oral statement made as a result of custodial interrogation to be used for impeachment purposes only, and then only if six prerequisites were met. See *Alfaro v. State*, 638 S.W.2d 891 (Tex.Cr.App.1982). However, since August 29, 1977, the pertinent portions of Art. 38.22 have not excluded from admission into evidence all oral statements made by an accused while in custody. Sec. 5 provides: "Nothing in this article precludes the admission of a statement ... that does not stem from custodial interrogation ...." Thus, as the Court of Appeals correctly discerned, the dispositive issue in this case is whether appellant's statements "stemmed from custodial interrogation," since it is undisputed that the State failed to comply with the requirements of Sec. 3.

In *Ancira v. State*, 516 S.W.2d 924 (Tex.Cr.App.1974), this Court wrote:

"We find it difficult to formulate a general rule to distinguish custodial interrogation from non-custodial interrogation. A case by case approach in which the evidence is viewed in the light of *Miranda* [1] and subsequent decisions is necessary."

Id. at 927 [footnote added.] Miranda defines custodial interrogation as "question-

ing initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). Accord, *Newberry v. State*, 552 S.W.2d 457, 461 (Tex.Cr.App. 1977).

In *Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297, 306 (1980), the Supreme Court rejected the notion "that the *Miranda* rules were to apply only to those police interrogation practices that involve express questioning of a defendant while in custody." The Supreme Court held instead:

"*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions *on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.*"

Id. at 300–301, 100 S.Ct. 1689–1690, 64 L.Ed.2d 307, 308. [footnotes omitted] [emphasis added.]

The Court of Appeals relied on this Court's decision in *McCrory v. State*, 643 S.W.2d 725 (Tex.Cr.App.1982), in holding that appellant's statements to Vera stemmed from custodial interrogation.

In *McCrory*, supra, a majority of this Court held that the oral statement in question was the result of custodial interrogation since the *record as a whole clearly established* [2] that the defendant's statement "'resulted from a calculated *practice*' which all agents of the State present knew was 'reasonably likely to evoke an incriminating response' from him." 643 S.W.2d at 734 [emphasis in original.]

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

■ As the Court of Appeals correctly recognized, Vera's employment with the Department of Human Resources, while making her an agent of the *"State"*, does not automatically make her an agent of the *"State"*, as we used that term in *McCrory*, meaning law enforcement and prosecution personnel. *Rhode Island v. Innis*, supra, makes it clear that the term "custodial interrogation" encompasses only *police* practices. The police practice established in *McCrory* was the use of non-law enforcement personnel to accomplish what the police could not have lawfully accomplished themselves. The record in *McCrory* revealed a plan on the part of the police to use Dr. Holbrook as a police instrumentality in the interrogation of McCrory so that the statements made to Dr. Holbrook were as though made to the police themselves. As the Court of Appeals correctly discerned, a state employee must be acting as an agent of law enforcement pursuant to a police practice before the safeguards attendant to custodial interrogation come into play. Only under those circumstances do non-law enforcement personnel become agents of the *State* for purposes of distinguishing custodial interrogation from non-custodial interrogation.

■ In the case sub judice, the Court of Appeals erred in its application of the law to the facts as they appear in the record. The record in this case is not well developed as to what took place inside the hospital room. Vera testified that she went to the hospital to see a client concerning the wellbeing of the client's children. The record is silent as to whether Vera had any discussion with the police officers in the room either before or after her conversation with appellant. We do not have the benefit of any testimony concerning the transaction in the hospital room from either the policewomen or the appellant. The record is also silent on how the shooting of appellant's husband came into the conversation between Vera and appellant. We can only wonder whether it was because Vera deliberately elicited the information or because appellant volunteered the information.

The Court of Appeals found that Vera was acting as an agent of the "State" based on the following:

"Q. [by Defense Counsel]: Before you talked with Josie Paez, did you give her any kind of warning? Did you tell her, you know, the statutory warning?

"A. [by Vera]: Yes, yes, I'm trying to recall because I think we did touch that issue.

"Q. You don't know what the warning is?

"A. Yes.

"Q. Could you recite it to me?

"A. No, I can't.

"Q. You don't know it and, needless to say, you couldn't have given it verbatim?

"A. Right."

The Court of Appeals found from these answers that Vera had actually attempted to give appellant the statutory warnings required by Art. 38.22, V.A.C.C.P. and that the only inference that could be drawn from her having so attempted was that she was in fact interrogating appellant on behalf of the onlooking police officers. We disagree.

Assuming arguendo that Vera's answers establish that she did actually attempt to give appellant the statutory warnings, the court of appeals erred in inferring that her having done so established that she was acting as an agent of the "State". Two other inferences strike us as being *at least* as reasonable as the one drawn by the court of appeals. Firstly, the police would not have wanted Vera to give appellant the statutory warnings if Vera was acting pursuant to a police plan, because appellant would have been more likely to invoke her rights were she informed of them. Secondly, if the police, who were in the hospital room, did want Vera to give appellant the statutory warnings, it seems reasonable to us to assume that they would have done so themselves or at least that they would have made sure that Vera did so correctly. Both

of these inferences militate against the inference drawn by the court of appeals; all three involve more speculation than appellate courts should undertake.

Viewing the totality of the circumstances, as well as what was not developed in the record, we are unable to say that the record as a whole establishes that appellant's statements to Vera were "the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309. [footnote omitted.] Since appellant's statements to Vera did not stem from custodial interrogation, Art. 38.22, supra, did not require their exclusion and the trial court did not err in admitting them.[3]

The judgment of the Fort Worth Court of Appeals is reversed, and the cause is remanded to that court for consideration of appellant's other grounds of error.

ONION, P.J., and CLINTON, TEAGUE and MILLER, JJ., dissent.

---

**3.** Since it was not raised by appellant at trial or on appeal, we leave for another day the applicability of the Texas exclusionary rule, Art. 38.23, V.A.C.C.P., to situations involving statements by an accused made to laypersons acting as agents of the "State."