Dionicio Vega GARZA, Appellant,

v.

The STATE of Texas, State.

No. 2–97–573–CR.

Court of Appeals of Texas, Fort Worth.

April 6, 2000.

Law Office of William H. "Bill" Ray, P.C., William H. "Bill" Ray, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Chief of the Appellate Section, Michael R. Casillas, Jay Lapham, and Barbara Medley, Asst. Crim. Dist. Attys, Fort Worth, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON REMAND

DIXON W. HOLMAN, Justice.

This case of aggravated sexual assault of a child comes to us on remand. On original submission, we considered Appellant Dionicio Vega Garza's first point and, relying on *Davis v. State*, 782 S.W.2d 211, 214 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990), held that a request for a jury shuffle must be made before the movant reviews juror information cards or biographical questionnaires. Accordingly, we ordered that Appellant's conviction be reversed and that the case be remanded for a new trial. *See Garza v. State*, 988 S.W.2d 352, 358 (Tex.App.—Fort Worth), *rev'd*, 7 S.W.3d 164 (Tex.Crim.App.1999). The Court of Criminal Appeals reversed our holding and instructed us to consider Appellant's remaining points. *See Garza v. State*, 7 S.W.3d 164, 166 (Tex.Crim.App. 1999). After carefully reviewing each of those points, we affirm the trial court's judgment.

## I. BACKGROUND

CQ and her mother Susan lived together in a trailer home. Susan began dating Appellant during the summer of 1994. One afternoon, Susan went to the store to buy some cigarettes and left CQ and Appellant alone together. While Susan was away, Appellant sexually assaulted CQ by rubbing his penis against her and by penetrating her female sexual organ. CQ was seven years old at the time.

## II. POINTS ON APPEAL

In his second point[1], Appellant complains that, during voir dire, the State improperly questioned prospective jurors by attempting to bind them to a specific set of facts. In point three, he insists that he was improperly restricted from asking CQ in court whether she had ever accused another person of committing the offense Appellant was charged with. Appellant also complains that he was not allowed to impeach a State's witness by questioning her about a prior inconsistent statement. The fourth point contends that the trial court erred by sustaining the State's objection when Appellant tried to ask about other suspects. Fifth, Appellant asserts it was error to exclude a document from evidence that a State's witness had used in preparation for her testimony. In point six, Appellant questions the court's refusal to let him impeach CQ's credibility. Appellant argues in point seven that the trial court should not have allowed the State to impeach him with his prior inconsistent statements made to a Child Protective Services ("CPS") employee. In point eight, Appellant argues that the court should have instructed the jury to find whether his statements to the CPS worker were voluntary. Last, Appellant claims that during closing argument the prosecutor improperly commented on Appellant's failure to present a witness who could contradict CQ's testimony.

## A. QUESTIONING DURING VOIR DIRE

 As a general rule, a trial judge is afforded broad discretion in conducting and controlling the voir dire proceeding. *See Shipley v. State*, 790 S.W.2d 604, 608 (Tex.Crim.App.1990) (op. on reh'g). Although it is permissible for a court to restrict voir dire in certain situations,[2] the decision to limit voir dire is reviewed by ascertaining whether the trial court abused its discretion in limiting the questioning. *See Allridge v. State*, 762 S.W.2d 146, 163 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

 In voir dire, a proper question seeks to discover a juror's views on an issue that is applicable to the case at bar. *See Shipley*, 790 S.W.2d at 609. Questions seeking to elicit bias[3] or prejudice[4] from prospective jurors are proper. *See Maddux v. State*, 862 S.W.2d 590, 592 (Tex. Crim.App.1993); *Osorio v. State*, 994 S.W.2d 249, 253–54 (Tex.App.—Houston

---

1. We addressed point one in our original opinion.

2. It is well within a trial court's discretion to impose reasonable restrictions on the exercise of voir dire examination. *See Clark v. State*, 608 S.W.2d 667, 669 (Tex.Crim.App. [Panel Op.] 1980). A trial court may properly (1) place reasonable time limits on the voir dire examination, (2) prevent the propounding of vexatious or repetitious questions, (3) disallow questions asked in an improper form, and (4) restrict inquiry into the personal habits of venirepersons, as opposed to inquiry into personal prejudices or moral beliefs. *See Abron v. State*, 523 S.W.2d 405, 408 (Tex.Crim.App. 1975).

3. For example, a potential juror may be biased against the law. This is true where he or she refuses to consider or apply the relevant law. *See Sadler v. State*, 977 S.W.2d 140, 142 (Tex.Crim.App.1998). Bias exists when a venireperson's beliefs or opinions "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Riley v. State*, 889 S.W.2d 290, 295 (Tex.Crim. App.1993), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

4. Prejudice means the forejudgment of an issue or possessing of a preconceived opinion concerning someone's guilt or innocence. *See* BLACK'S LAW DICTIONARY 1179 (6th ed.1990).

[14th Dist.] 1999, pet. ref'd). Improper questions include those that ask potential jurors to reach conclusions based on "hypothetical facts" that mirror the case. *See White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982). Discretion is abused when a proper question about a proper area of inquiry is prohibited. *See Allridge,* 762 S.W.2d at 163; *Dutton v. State,* 874 S.W.2d 206, 207 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). When a trial court limits a litigant's use of proper questions, the trial court prevents the party from making an intelligent decision regarding the use of peremptory challenges. *See Shipley,* 790 S.W.2d at 609; *Allridge,* 762 S.W.2d at 163.[5]

■■■■ Appellant objected that the following portion of the prosecutor's voir dire was an impermissible attempt by the State to bind the veniremember to a specific set of facts:

> One last thing, medical testimony. The State is not required to bring any medical testimony. Okay? Let me ask Ms. Bridges. Would you require the State to bring you any medical evidence?

Although a party may not bind a juror to a specific set of facts, *see White,* 629 S.W.2d at 706, a prosecutor is entitled to ask a prospective juror whether he or she will require evidence the law does not require for a verdict of guilty. *See Robinson v. State,* 985 S.W.2d 584, 587–88 (Tex.App.—Texarkana 1998, pet. ref'd). A conviction for sexual assault may be affirmed absent any medical evidence and solely on the testimony of the victim. *See Rodriguez v. State,* 819 S.W.2d 871, 873–74 (Tex.Crim. App.1991); *Ruiz v. State,* 891 S.W.2d 302, 304 (Tex.App.—San Antonio 1994, pet. ref'd); *Knabe v. State,* 836 S.W.2d 837, 839 (Tex.App.—Fort Worth 1992, pet. ref'd). We conclude that the trial court did not abuse its discretion by overruling Appel-

lant's objection to the prosecutor's questions of juror Bridges.

■■■■ Appellant also challenges the following portion of the prosecutor's voir dire that attempted to learn whether any of the veniremembers would have a problem believing a child witness. Appellant asserts that the statements and questions improperly committed the venire to a specific set of facts:

> Our Constitution says—both the Texas Constitution and the Federal Constitution—that a defendant has an absolute right to face their accuser whether they are three or they are 93. Okay? So, you know, more likely than not you will hear from a child. Okay? So now my questions are kind of going along the lines of—what we are trying to do, both the State and the Defense, are trying to get fair and impartial individuals that don't have preconceived notions.
>
> And maybe because of someone's life experience, because they have children or they don't have children, they think, you know what, any kid, any child, if their head isn't above this railing when they walk in here, I am not going to believe a word they say. Is there anybody that feels that way?
>
> Or maybe just because they are a child, a little person, under this height, that you know what, if you bring somebody in shorter than this—let's say a particular age, or under seven, under seven, I'm sorry, I can't believe them.

Nevertheless, those inquiries by the prosecutor were proper for the purpose of learning whether any veniremember had bias[6] or prejudice[7] against a child's testimony. The testimony of a child victim by itself is sufficient to support a conviction for sexual assault, *see Ruiz,* 891 S.W.2d at 304, and a potential juror who could not believe a witness simply for the fact of being a child would properly be excused for cause. *See Davis v. State,* 894 S.W.2d 471, 474 (Tex.App.—Fort Worth 1995, no

---

**5.** The denial of a proper question to the venire is always reversible error. *See Maddux,* 862 S.W.2d at 592.

**6.** *See* supra note 3.

**7.** *See* supra note 4.

pet.); *see also Perez v. State*, 960 S.W.2d 84, 88 (Tex.App.—Austin 1997, no pet.). Those inquiries by the prosecutor did not attempt to bind the venire to a specific set of facts, and we overrule Appellant's second point.

## B. RIGHT OF CONFRONTATION AND IMPEACHMENT OF WITNESSES

The Sixth Amendment insures that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Implicit within this right, as applied to the states via the Fourteenth Amendment, is the defendant's right of cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). However, this right is not absolute and can be denied where the evidence bears an indicia of reliability to protect the integrity of the fact-finding process. *See Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *Porter v. State*, 578 S.W.2d 742, 745 (Tex. Crim.App.1979). Consequently, a trial court's broad discretion to limit the extent of cross-examination requires the trial judge to carefully weigh the probative value of the evidence against the potential risks of prejudicing a party unfairly, embarrassing or harassing a witness, misleading or confusing the jury, and delaying or wasting time needlessly. *See Hoyos v. State*, 951 S.W.2d 503, 506 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 982 S.W.2d 419 (1998).

### 1. Right to Cross–Examine CQ

Appellant insists that the trial court abused its discretion by denying his Sixth Amendment right to confront CQ by asking her whether she had ever claimed that someone other than Appellant had sexually abused her. Appellant questioned CQ about this matter out of the jury's presence and CQ testified that Appellant was the only person she had accused of molesting her. She also swore that she did not think she had ever stated otherwise. Appellant neither elicited any controverting testimony from any witness nor established that CQ had accused any other person.

Before a witness may be impeached with a prior inconsistent statement, the party offering the impeaching testimony must establish that the prior statement was made by the witness whom the party is now trying to impeach. *See* Tex.R. Evid. 613; *Bigby v. State*, 892 S.W.2d 864, 886 (Tex.Crim.App.1994), *cert. denied*, 515 U.S. 1162, 115 S.Ct. 2617 (1995). That can be done by calling a witness who actually heard the inconsistent statement being made. *See Lafoon v. State*, 543 S.W.2d 617, 621 (Tex.Crim.App. 1976). In this case, a proper impeaching witness would be Paul Scott, the person to whom CQ allegedly made the prior inconsistent statement. Because Appellant never established that CQ actually made the prior inconsistent statement he sought to impeach her with, the trial court did not abuse its discretion by limiting Appellant's right to cross-examine CQ on that matter.

### 2. Right to Cross–Examine Kitty Newbern

Appellant also argues that the trial court abused its discretion by denying his Sixth Amendment right to confront Kitty Newbern[8] by cross-examining her before the jury about a prior inconsistent statement she allegedly made. Newbern testified outside the jury's presence that Marlene Tucker[9] never told her that CQ had been held down by her mother while Appellant sexually assaulted her.[10] New-

---

**8.** Newbern, a nurse at Catholic Charities, performed a sexual assault exam on CQ after she made her outcry.

**9.** Tucker was CQ's foster mother. References to CQ's "mother" are to her biological mother.

**10.** Tucker also denied making such a statement to Newbern and testified that CQ never told her (Tucker) that.

bern then admitted that she had testified to the contrary at a previous parental-rights termination hearing. At that point, Appellant contended that because Newbern testified inconsistently during the trial and the termination hearing, the trial court committed reversible error by excluding Newbern's inconsistent testimony from the jury.

Although Newbern admitted that, because she failed to consult her file notes, she testified erroneously at the parental-rights termination hearing, she corrected her hearing testimony by stating that her notes confirmed that a CPS worker named Paul Scott, not Tucker, told her that CQ had been held down and sexually molested. Newbern testified that CQ never told her that CQ's mother held CQ while Appellant sexually assaulted her. It is improper to impeach a witness on an immaterial or collateral matter. See *Flannery v. State*, 676 S.W.2d 369, 370 (Tex.Crim.App.1984); *Williams v. State*, 542 S.W.2d 131, 138 (Tex.Crim.App.1976). Here, the substance of Newbern's testimony remains the same regardless of the source—that as far as Newbern knew, only Appellant sexually assaulted CQ. We overrule point three.

## C. ALLEGATIONS OF ADDITIONAL SUSPECTS

Appellant insists that the trial court abused its discretion by erroneously restricting him from questioning Detective Murphy about other suspects. Outside the jury's presence, Detective Murphy testified that he had received third-hand information that CQ had been molested by a male in her home and that everyone assumed that it was Christopher Reinarz. The trial court sustained the State's objection, ruling that the testimony was irrelevant. See Tex.R. Evid. 401. Appellant argues on appeal that any evidence of another suspect would certainly be relevant.

The burden of demonstrating the relevancy of proposed testimony rests on the proponent of the evidence. See *Holt v. State*, 912 S.W.2d 294, 301 (Tex.App.—San Antonio 1995, pet. ref'd). Evi-dence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. See Tex.R. Evid. 401; *Contreras v. State*, 915 S.W.2d 510, 519 (Tex.App.—El Paso 1995, pet. ref'd) (noting that evidence is relevant when there is a relationship between the evidence and a matter that is properly provable in the case on trial). Accordingly, courts must examine the purpose for which the evidence is offered and whether there is a direct or logical connection between the evidence and the proposition sought to be proven. See *Fletcher v. State*, 852 S.W.2d 271, 276–77 (Tex.App.—Dallas 1993, pet. ref'd).

Detective Murphy never testified that CQ had identified Reinarz as her molester or that any physical or forensic evidence pointed to him. Detective Murphy simply stated that he had only assumed that Reinarz was a suspect and that he had no basis for his assumption other than inadmissible hearsay. While relevant evidence is always presumed to be admissible, irrelevant evidence is never admissible. See Tex.R. Evid. 402. Therefore, the trial court did not abuse its discretion by excluding Detective Murphy's testimony regarding Reinarz as a suspect because it could have found that there was no connection other than speculation based on inadmissible hearsay linking Reinarz as a possible suspect. See *id.* 401, 402; *Nolen v. State*, 872 S.W.2d 807, 812 (Tex.App.—Fort Worth 1994, pet. ref'd) (stating that relevancy is not established by trying to assert inference upon inference in a chain that is too attenuated). We overrule point four.

## D. WRITINGS USED TO REFRESH RECOLLECTIONS

When a witness uses a writing to refresh her memory before or during examination, the adverse party may demand to inspect the writing, to cross-examine the witness thereon, and to intro-

duce into evidence any portion that relates to the witness' testimony. *See* Tex.R. Evid. 612; *Robertson v. State,* 871 S.W.2d 701, 708 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). If the document is introduced, it is not offered for the truth of its content, but rather for the jury's use in comparing the document to the witness' testimony. *See Robertson,* 871 S.W.2d at 708. If it is claimed by the party calling the witness· that the writing contains matters not related to the subject matter of the testimony, the trial court must review the writing to determine whether it contains unrelated portions. *See id.* If so, those portions are redacted from the document and preserved for appellate review. *See id.* This rule is designed to allow the jury a means to compare the testimony of the witness to the document she relied on to refresh her memory. *See id.* at 709.

▮ Appellant argues that the trial court abused its discretion by excluding from evidence an intake summary that Kelly Hutchinson, a CPS supervisor, reviewed and relied on during her testimony for the State. On cross-examination, Appellant questioned Hutchinson about the sexual abuse allegations she had investigated. Hutchinson testified that there were allegations of sexual intercourse between Appellant and CQ. Appellant then tried to introduce two sentences of the intake report: "[CQ] told her foster mother that mother's boyfriend had had sexual intercourse with her" and "[Mother] knows about this in that [Mother] admits to walking in on Johnnie making [CQ] perform oral sex on him." Because Appellant had a right to introduce the relevant portions of the writing under Rule 612, the trial court erred by excluding the portions that related to Hutchinson's testimony. *See Robertson,* 871 S.W.2d at 708.

▮ Because the trial court's error is not constitutional, we will examine whether the error affected Appellant's substantial rights. *See* Tex.R.App. P. 44.2(b). A sub-stantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim. App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.— Fort Worth 1998, pet. ref'd) (en banc).

Due to the fact that Rule 44.2(b) is virtually identical to Rule 52(a) of the Federal Rules of Criminal Procedure,[11] we look to federal caselaw for guidance in applying this rule. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall,* 961 S.W.2d at 642–43; *Umoja v. State,* 965 S.W.2d 3, 11 (Tex.App.—Fort Worth 1998, no pet.) (op. on reh'g). Accordingly, we review the record as a whole to determine whether the error had a substantial influence on the jury's verdict. *See Mosley,* 983 S.W.2d at 260; *see also United States v. Blake,* 107 F.3d 651, 653 (8ᵗʰ Cir.1997); *United States v. Wilson,* 107 F.3d 774, 785–86 (10ᵗʰ Cir.1997).

We cannot say that the trial court's· failure to admit the writing relied on by Hutchinson had a substantial influence on the jury's verdict. The sentences Appellant sought to introduce in no way contradicted the substance of Hutchinson's testimony. There was testimony that Appellant was CQ's mother's boyfriend and that they often referred to him as "Johnny." CQ testified that Appellant penetrated her female sexual organ with his penis. Hutchinson would not have been impeached by the report, and therefore, the trial court's error in excluding the report did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Thus, we will disregard the error, *see* Tex.R.App. P. 44.2(b), and overrule point five.

---

11. Rule 52(a) states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed. R.Crim.P. 52(a).

### E. CQ'S REPUTATION FOR TRUTHFULNESS

Appellant contends that the trial court abused its discretion by refusing to allow a witness to testify about CQ's reputation for truthfulness. Appellant asserts that he asked Debra Davis, who was one of CQ's counselors, to testify about CQ's reputation for truthfulness and that the court's *sua sponte* determination that CQ was truthful was an abuse of discretion.

Once a witness has testified, evidence pertaining to the witness' bad reputation for truthfulness may be introduced to attack that witness' credibility. *See* TEX.R. EVID. 608(a). A reputation witness' testimony cannot be based upon specific acts of conduct of the witness whose credibility is being attacked but rather upon a synthesis of "observations and discussions which results in a conclusion as to the individual's reputation." *Adanandus v. State*, 866 S.W.2d 210, 226 (Tex.Crim. App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Wagner v. State*, 687 S.W.2d 303, 313 (Tex. Crim.App.1985). To be an appropriate reputation witness, the witness must have a substantial familiarity with the reputation of the person about whom the witness is supposed to testify. *See Lopez v. State*, 860 S.W.2d 938, 944–45 (Tex.App.—San Antonio 1993, no pet.).

Appellant attempted to introduce Davis' testimony to establish that she had heard that CQ had a bad reputation for being truthful. Although Davis admitted that she had heard that CQ was untruthful, Davis stated that CQ's foster father was the only person whom she had heard that from. Davis also swore that she personally believed that CQ was truthful and that CQ's foster father's credibility was suspect. Because Davis had only heard about CQ's untruthful nature from one person, the testimony Appellant sought to elicit from her was not based upon a "synthesis of observations and discussions." *Adanandus*, 866 S.W.2d at 226. Therefore, because Davis was not substantially familiar

with CQ's reputation, the trial court did not err by disallowing Davis' testimony. *See id.*; *Lopez*, 860 S.W.2d at 944–45. We overrule point six.

### F. THE RIGHT TO COUNSEL AND APPELLANT'S INTERVIEW IN JAIL

#### 1. Fifth Amendment Claim

Kelly Hutchinson, a CPS employee, met with Appellant on January 17, 1996 while he was an inmate of the Tarrant County Jail. At that time, the court had appointed counsel to represent him. Hutchinson told Appellant she was there to investigate the allegations of sexual abuse concerning CQ. During their exchange, Appellant admitted that he had awakened and found CQ in bed with him. Appellant also denied sexually abusing CQ, but he stated that if any sexual contact had occurred, it must have been when he was asleep. Appellant called Hutchinson later that day or the following day and asked her if she would meet with him again. Hutchinson agreed and during this second interview, Appellant reiterated that if any sexual contact occurred, it was while he was sleeping.

Before admitting this testimony, the trial court held a *Jackson v. Denno* [12] hearing and found that Hutchinson was not acting as a law enforcement officer when she interviewed Appellant in jail and that his statements were voluntary. The court then proceeded to allow Hutchinson's testimony about the jail interview, but only if Appellant denied what he told her in jail. Appellant challenges the trial court's ruling by arguing that Hutchinson's testimony was improper impeachment testimony and should not have been allowed because Hutchinson failed to warn Appellant before interviewing him. The Fifth Amendment provides that no person shall be denied life, liberty, or property without due process of law. *See* U.S. CONST. amend. V. This privilege serves to protect persons

12. *Jackson v. Denno*, 378 U.S. 368, 380, 84 S.Ct. 1774, 1783, 12 L.Ed.2d 908 (1964).

from being compelled to incriminate themselves in all settings in which their freedom of action is curtailed in any significant manner. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

 *Miranda* holds that when a criminal suspect is placed in custody, law enforcement personnel must comply with certain procedural safeguards in order to protect the suspect's privilege against compulsory self-incrimination under the Fifth Amendment. *See id.* at 444, 86 S.Ct. at 1612. For example, in a situation where *Miranda* applies, a suspect must be informed of his right to an attorney, *see id.* at 479, 86 S.Ct. at 1630, and if the suspect invokes that right, all police questioning must halt. *See Miffleton v. State,* 777 S.W.2d 76, 79 (Tex.Crim.App.1989). However, *Miranda*'s safeguards apply only when a suspect is placed in custody and interrogated by police. *See Rhode Island v. Innis,* 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *Jones v. State,* 795 S.W.2d 171, 174–75 (Tex.Crim.App.1990). Because custodial interrogation includes the express questioning of a suspect, or any words or actions by the police other than those normally attendant to arrest, that the police should know are "reasonably likely to elicit an incriminating response," *Innis,* 446 U.S. at 302, 100 S.Ct. at 1690; *see also Townsend v. State,* 813 S.W.2d 181, 186 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd), we must consider whether Hutchinson was acting as an extension of the police when she interviewed Appellant.

 A person who becomes an employee of a regulatory agency such as CPS does not automatically acquire the status of a law enforcement officer. *See e.g., Cates v. State,* 776 S.W.2d 170, 171–72 (Tex.Crim.App.1989). We must look at the record as a whole to determine whether Appellant's admissions were the product of a calculated practice by Hutchinson as a CPS worker to attain what the police could not have lawfully accomplished themselves. *See Cates,* 776 S.W.2d at 172; *Paez v.*

*State,* 681 S.W.2d 34, 36 (Tex.Crim.App. 1984); *McCrory v. State,* 643 S.W.2d 725, 734 (Tex.Crim.App.1982).

In *Paez,* the Court of Criminal Appeals held that an investigator with the Texas Department of Human Resources ("DHR") was not an extension of the police because she was not conducting a child abuse investigation at the time the defendant inculpated herself. *See Paez,* 681 S.W.2d at 38. The defendant had been charged and tried for the murder of her husband, not for child abuse. *See id.* at 35. The court reasoned that the DHR investigator's motivation for questioning the defendant was not to elicit incriminating statements from her regarding child abuse, but rather to determine the well-being of the defendant's children. *See id.* at 37.

The Court of Criminal Appeals was faced with an analogous situation five years later. However, the court declined to adopt a bright line rule and distinguished *Paez* on its facts. *See Cates,* 776 S.W.2d at 173. In holding that the DHR investigator in *Cates* was an extension of the police, the court emphasized that the defendant was the central figure of a criminal investigation for child abuse and that the investigator's function in pursuing a child abuser was to enforce the laws of Texas by discovering abuse and reporting it to the police. *See id.* The court ended its discussion by noting that it was evident that the DHR investigator was conducting a criminal investigation and officially operating to assist police in enforcing the State's criminal laws. *See id.* at 174.

Hutchinson testified on direct-examination that her function as a CPS investigator was to investigate allegations of abuse or neglect and to ultimately act in a manner that would provide safety for the child. She stated that the focus of her investigation was to find out what happened to CQ and she explained to Appellant that she was there because of a civil proceeding pertaining to the allegations of sexual abuse against him. On cross-examination, Hutchinson testified that she had been

contacted by an investigator for the district attorney's office prior to visiting Appellant in jail. Hutchinson knew before she interviewed Appellant that the district attorney's office wanted the entire civil file, which would include her interview with Appellant.[13]

Part of Hutchinson's job as a CPS worker was to report allegations of sexual abuse. In fact, she contacted the police in November 1995 with accusations that Appellant had sexually assaulted CQ, which ultimately led to his arrest. Because the primary factors courts should consider when reviewing the record are the investigator's motivations and the purpose for conducting the interview, *see id.* at 172–73, we conclude that Hutchinson was acting as an extension of the police. Although Hutchinson swore that she was not associated with law enforcement in any manner and that she was not licensed to carry a firearm, unequivocal testimony by a witness that he or she is not a law enforcement officer or that he or she does not have the power to arrest is not dispositive. *See id.* at 173.

▮ Additionally, we conclude that Hutchinson deliberately elicited incriminating information in violation of Appellant's Fifth Amendment right against self-incrimination and, as a general rule, any evidence that is obtained illegally is inadmissible. *See* U.S. CONST. amend. IV. But, where a defendant's direct examination is incompatible with the evidence, the self-incriminating statements may be used to impeach the defendant's credibility as long as they were made voluntarily. *See United States v. Havens,* 446 U.S. 620, 627, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980); *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971).

▮ Appellant testified that his statements were involuntary, but after re-viewing the record as a whole, it is apparent that his statements were voluntary and not the result of any threat, force, or coercion by Hutchinson. Appellant testified that he agreed to speak with Hutchinson and that she did not threaten him in any manner. Hutchinson was unarmed and she did not promise Appellant anything in exchange for his cooperation. She identified herself as a CPS worker and explained that she was there to investigate allegations of sexual abuse. While Appellant claims that he would not have spoken with Hutchinson had he known that she would inform the district attorney's office of what he said, he admitted that he spoke to Hutchinson because he believed that she was going to help him. A defendant's subjective belief is insufficient to render his statement involuntary, *see Lykins v. State,* 784 S.W.2d 32, 36–37 (Tex.Crim. App.1989), and based on the facts before us, the trial court reasonably could have found that Appellant voluntarily spoke with Hutchinson. He talked with Hutchinson freely and even called her the following day wanting to talk with her again. The trial court did not abuse its discretion by allowing the State to introduce Appellant's statements after he testified on direct.

**2. Sixth Amendment Claim**

▮ Appellant also contends that his Sixth Amendment right to counsel had attached at the time the statements were made. Under the Federal Constitution, the Sixth Amendment right to counsel attaches upon the commencement of adversarial proceedings. *See Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). This is usually when a suspect is indicted or arraigned.[14] *See Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d. 424 (1977).

---

**13.** Hutchinson eventually turned over the file to the district attorney's office.

**14.** The Supreme Court has not established a bright line marking when adversarial proceedings begin. *See United States v. Gouveia,* 467 U.S. 180, 187–89, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984). The Court of Criminal Appeals has also refused to declare a definitive rule. *See e.g., State v. Frye,* 897 S.W.2d 324, 327–28 (Tex.Crim.App.1995).

In this case, Appellant's Sixth Amendment right to counsel had attached at the time he made the inculpatory statements. *See Estelle v. Smith,* 451 U.S. 454, 469, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981).

 Generally, where the Sixth Amendment right to counsel has attached, any statement deliberately elicited from an accused is inadmissible at his trial. *See United States v. Henry,* 447 U.S. 264, 274–75, 100 S.Ct. 2183, 2189, 65 L.Ed.2d 115 (1980). Nevertheless, the Sixth Amendment does not bar the use of a defendant's voluntary statement for impeachment where the defendant testifies at trial, even if the impeaching statements were elicited in violation of that defendant's Sixth Amendment right to counsel. *See Michigan v. Harvey,* 494 U.S. 344, 345–46, 110 S.Ct. 1176, 1177–78, 108 L.Ed.2d 293 (1990). Therefore, the issue here is whether Appellant's statements were voluntary, and having already determined that they were, we overrule point seven.

### G. JURY CHARGE

 Where the voluntariness of a defendant's statement is raised by the evidence, the jury, as the trier of fact, should be charged to find whether the defendant voluntarily provided the statement. *See Smith v. State,* 504 S.W.2d 875, 876 (Tex. Crim.App.1974). Failure to charge the jury about a disputed question of fact is reversible error, *see Atkinson v. State,* 923 S.W.2d 21, 23–25 (Tex.Crim.App.1996), but no error is committed by not charging on the question of voluntariness when there is no evidence that the defendant's statement was involuntary. *See McDonald v. State,* 631 S.W.2d 237, 239 (Tex.App.—Fort Worth 1982, no pet.).

Appellant argues that the trial court erred by failing to charge the jury on the voluntariness of his statements to Hutchinson. In *Thomas v. State,* 723 S.W.2d 696 (Tex.Crim.App.1986), the Court of Criminal Appeals stated: "[a] trial court is required to include a properly worded Article 38.23 instruction in the jury charge only if there is a factual dispute as to how the evidence was obtained." *Id.* at 707. In *Thomas,* the appellant testified but never controverted facts surrounding his refusal to provide a breath sample. *See id.* The court found that no instruction to the jury was necessary because there was no factual dispute as to how the evidence was obtained. *See id.*

 Similarly, we find that the evidence here failed to raise an issue that would require the trial court to instruct the jury on voluntariness as required by article 38.22, section 7 of the Texas Code of Criminal Procedure. Appellant admitted that when he spoke with Hutchinson, he was not under the impression that he had to speak with her. Appellant agreed to speak with her without any threats or promises from her. Appellant admitted that he called Hutchinson the day after her first visit with him and asked her to meet with him again. Appellant admitted to speaking with Hutchinson freely, hoping that she might help him. In light of these facts, the trial court did not err by refusing to submit an instruction to the jury regarding the voluntariness of Appellant's statement. We overrule point eight.

### H. JURY ARGUMENT

 Appellant argues that the State improperly commented on his failure to bring forth testimony during the guilt or innocence phase of the trial. Permissible jury argument falls within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) pleas for law enforcement; and (4) response to opposing counsel. *See Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim. App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim. App.1973).

 In reviewing complaints about comments made during closing argument, appellate courts review the comments within the context of the entire argument. *See Drew v. State,* 743 S.W.2d 207, 220

**828**

(Tex.Crim.App.1987). When a trial court sustains an objection but denies a motion for mistrial, an appellate court will find reversible error only where the argument was so inflammatory, extreme, and manifestly improper that an instruction to disregard could not cure its prejudicial effect. *See Faulkner v. State*, 940 S.W.2d 308, 312 (Tex.App.—Fort Worth 1997, pet. ref'd) (en banc) (op. on reh'g).

■ The theme of Appellant's closing argument alleged the *inconsistency* of the State's case. Appellant argued that the State had not met its burden of proving his guilt beyond a reasonable doubt because the State's evidence was inconsistent with his alleged guilt. For example, Appellant argued that CQ could not remember her age at the time of the abuse or how many times the abuse had occurred.

■ The State responded on rebuttal that Appellant's own testimony was inconsistent and that CQ had named Appellant in a videotape as the perpetrator. The prosecutor's rebuttal argument said that if CQ's allegations were inconsistent, Appellant would have produced a witness to attest to that fact. Appropriately, the trial court instructed the jury to disregard that portion of the prosecutor's argument. Almost any improper argument can be cured by such an instruction. *See id.* The State does not exceed the bounds of permissible jury argument by commenting on a defendant's failure to call competent and material witnesses. *See Rousseau v. State*, 855 S.W.2d 666, 682 (Tex.Crim. App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). We are not persuaded that the trial court's instruction to disregard failed to cure the prejudicial effect, if any, of the State's argument in this case. *See Faulkner,* 940 S.W.2d at 312. We overrule point nine.

### III. CONCLUSION

Because we have overruled each of Appellant's remaining points, and because there is no error requiring reversal of his conviction, we affirm the trial court's judgment.