

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00130-CR

———————————————

KING SOLOMAN MALONE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1469054D

Before Gabriel, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant King Soloman Malone appeals from his conviction for possession of between 4 and 200 grams of cocaine with the intent to deliver. In seven issues, he challenges the denial of his motion to suppress the evidence found after a warrantless search of his car, the trial court's refusal to charge the jury on the circumstances under which they could disregard the seized evidence, the sufficiency of the evidence to prove his intent to deliver, and the trial court's admission at punishment of his prior convictions. Finding no reversible error, we affirm the trial court's judgment.

## I.  BACKGROUND

In the early morning hours of September 5, 2016, Officer Anthony Arroyo was patrolling in an area of Fort Worth that has "several neighborhoods . . . that are high-drug, high-crime areas." He saw a car going over fifty miles per hour in "a residential area." Because the area "usually [had] people that might be intoxicated leaving bars, leaving clubs," Arroyo decided to conduct a traffic stop.

Arroyo turned on the lights of his patrol car and began to chase the speeding car, which went as fast as sixty miles per hour. The car finally slowed and turned into a residential driveway. Malone, the driver, began to get out of the car, which Arroyo found to be "suspicious," and Arroyo yelled for him to stay in the car. Arroyo approached the driver's side of the car and asked for Malone's driver's license and insurance, which he did not have. When Arroyo asked for his name, Malone identified himself and gave his birthdate. While he was talking to Malone, Arroyo

2

noticed a bottle in a brown paper sack in the passenger seat, leading him to suspect Malone was intoxicated.

Arroyo returned to his patrol car and "ran" Malone's name through a database to "find out if he ha[d] a valid driver's license, if he ha[d] any outstanding warrants or anything to that effect." While doing the computer check, Arroyo noticed Malone's "head moving around [back and forth and across to the passenger seat], . . . something [was] kind of weird, and [Malone] already told [Arroyo] that he [did not] have a license or insurance, but he[] [was] moving around a lot, looking for something or hiding something," such as alcohol, weapons, or drugs. The computer check revealed three "possible" outstanding warrants for Malone's arrest in Fort Worth.

Arroyo called for back-up officers. After the other officers arrived, a woman from inside the house came out to see what was going on, leading Arroyo to discover that Malone did not live at the house, which Arroyo thought was "fishy" and "weird." Arroyo approached the car and saw that Malone was talking on the phone and smoking a cigarette. Arroyo told Malone to get out of the car so Arroyo could determine if there were weapons in the car, determine what was "going on," and "conduct [the] investigation without having him moving around where [the officers could not] see him." Arroyo patted Malone down for weapons, handcuffed him "for safety reasons," and told him he was detained. Arroyo also asked Malone for consent to search his car, which Malone gave.

3

In searching Malone's car, officers found baggies of marijuana, a large "rocklike substance" that appeared to be cocaine, baggies of the same type of substance, numerous empty baggies, and a razor with cocaine residue. Malone was arrested and indicted with possession of cocaine with the intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d).

The day before trial, Malone filed a motion to suppress the drugs and paraphernalia found in his car; the videos taken by Arroyo's dashboard and body cameras of the stop, detention, and arrest; and the statements Malone made as a result of the warrantless search and seizure through an invalid consent. Malone did not request a hearing on the motion prior to trial and did not object to the State's assertion that the defense wished "to run [the motion] concurrently with the trial." Malone did object at trial to the State's proffer of the videos and relied on his arguments in his motion to suppress. The trial court overruled the objection and admitted the videos.[1] The trial court did, however, sustain Malone's objection to the admission of his statements regarding "who own[ed] the drugs." After the evidence at the guilt-innocence phase of the trial was closed, Malone "re-urge[d]" his motion to

_____

[1]Although we commend the State's attempts to piece together an outside-the-record explanation of the parties' understanding of Malone's motion and how it would be raised or preserved during the trial, we decline the State's invitation to look to evidence that is not contained in the record. We will address this issue as it is briefed and under the facts presented by the record.

4

suppress, which the trial court denied. A jury found Malone guilty of the charged offense and assessed his sentence at forty years' confinement.

## II. DISCUSSION

### A. SUPPRESSION ARGUMENTS

In his first four points, Malone argues that the trial court erred by denying his suppression motion and by failing to charge the jury on consent, reasonable suspicion, and the circumstances barring its consideration of his statements to the officers. We overrule these points for the following reasons.

### 1. Denial of Motion

#### a. Review standards

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We may uphold the trial court's ruling if it is supported by

the record and is correct under any theory of law applicable to the case. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

### b. Failure to hold pretrial hearing

Malone asserts that the trial court "should have" heard his motion "separately." The trial court had the sole discretion to hold or not hold a hearing on the motion. *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1(6); *Calloway v. State*, 743 S.W.2d 645, 649–50 (Tex. Crim. App. 1988). In light of the fact that Malone agreed to not address the issue pretrial but to address it during the trial as the issue arose, we cannot conclude that the failure to hold a hearing before trial was an abuse of that statutory discretion. *See Calloway*, 743 S.W.2d at 649–50.

### c. Reasonable suspicion for detention

Malone posits that the temporary detention was not supported by reasonable suspicion because Arroyo did not have specific, articulable facts upon which to rationally infer that Malone was or would be engaged in criminal activity. The lawfulness of a brief investigative detention or seizure is determined based on the totality of the circumstances known to the officer at the time. *See State v. Cortez*, 543 S.W.3d 198, 203–04 (Tex. Crim. App. 2018); *Manyvorn v. State*, No. 02-18-00451-CR, 2019 WL 3244494, at *5 (Tex. App.—Fort Worth July 18, 2019, no pet. h.) (mem. op., not designated for publication). Generally, an officer may stop and detain someone if the officer has reasonable suspicion to believe a traffic violation occurred.

6

*See Whren v. United States*, 517 U.S. 806, 810 (1996); *Cortez*, 543 S.W.3d at 204; *Powell v. State*, 5 S.W.3d 369, 376–79 (Tex. App.—Texarkana 1999, pet. ref'd).

Arroyo testified that Malone was speeding in the early morning hours through a high-crime, residential area that was prone to drunk drivers. At the beginning of the traffic stop, Arroyo noticed that Malone was acting suspiciously and that a bottle in a brown paper bag was on the passenger seat. Arroyo discovered that Malone had three possible warrants during the extended stop and saw Malone acting as if he knew he would be going to jail. These facts, viewed objectively, were sufficiently specific to provide Arroyo with the reasonable suspicion that Malone was engaging in criminal activity, justifying the traffic stop, the further investigation, and the temporary detention. *See, e.g., Lerma v. State*, 543 S.W.3d 184, 190–95 (Tex. Crim. App. 2018); *Jones v. State*, No. 14-15-00612-CR, 2016 WL 6886832, at *5–6 (Tex. App.—Houston [14th Dist.] Nov. 22, 2016, no pet.) (mem. op., not designated for publication); *Reed v. State*, 308 S.W.3d 417, 420–21 (Tex. App.—Fort Worth 2010, no pet.); *Hicks v. State*, 255 S.W.3d 351, 354 (Tex. App.—Texarkana 2008, no pet.).

### d. Voluntary consent

Malone argues that his consent to search the car, which led to the discovery of the controlled substances and paraphernalia, was involuntary; thus, he concludes that the evidence should have been suppressed. To support his argument, Malone points to the fact that he was handcuffed when he consented to the search, which he claims renders his consent involuntary because he had not been informed of his rights as is

required after an arrest. It was the State's burden to prove the voluntariness of Malone's consent by clear and convincing evidence based on the totality of the circumstances. *See Meekins v. State*, 340 S.W.3d 454, 459–60 (Tex. Crim. App. 2011). We defer to the trial court's fact-intensive determination unless it was clearly erroneous. *See id.* at 460.

Malone's involuntariness contention assumes that his handcuffing resulted in the transformation of the temporary detention into an arrest. This is not correct. *See State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008). Arroyo testified that he handcuffed Malone for officer safety and in response to Malone's behavior:

> Usually if somebody lights up a cigarette, it means, in my experience in making arrests for this exact same thing, they believe they're going to jail. Making a phone call, calling mom, girlfriend, wife, daughter, Hey, come get my car; Hey, come bring me money, I'm going to jail; Please put money on my books, And that's what I believed.
>
> . . . .
>
> We don't want other family members showing up, because usually somebody going to jail, putting handcuffs on, basically gets people heated and we don't want . . . to get hurt by someone else's family member getting mad because their family member is going to jail, but I also don't want to hurt somebody because of somebody else's bad decision.

Given the totality of the circumstances presented to the trial court through Arroyo's testimony and the videos, we cannot conclude that the trial court clearly erred by implicitly concluding that Malone's consent to search was voluntary based on clear and convincing evidence. *See, e.g.*, *id.* at 290–92; *Nunez-Hernandez v. State*, No. 10-17-

8

00039-CR, 2019 WL 2557455, at \*2–4 (Tex. App.—Waco June 19, 2019, no pet.) (mem. op., not designated for publication); *Lightfoot v. State*, No. 07-17-00226-CR, 2018 WL 5020650, at \*1–2 (Tex. App.—Amarillo Oct. 16, 2018, pet. ref'd) (mem. op., not designated for publication); *Reed v. State*, No. 2-03-157-CR, 2004 WL 1354068, at \*3–5 (Tex. App.—Fort Worth June 17, 2004, no pet.) (not designated for publication).

## 2. Requested Jury Instructions

Malone requested three instructions be included in the jury charge, each relating to the jury's consideration of evidence possibly subject to the exclusionary rule. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). The trial court denied each request. Malone contends that because his motion to suppress had been denied and because the jury had heard the evidence that was the subject of that motion, "jurors should be allowed to decide these issues."

The code of criminal procedure provides that a trial court must instruct a jury to resolve factual disputes involving the exclusionary rule:

> In any case where the legal evidence raises an issue [regarding the exclusionary rule], the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of [the exclusionary rule], then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* The trial court's mandatory duty to so charge a jury is triggered only if there is a factual dispute as to how the evidence was obtained. *See Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986); *Garza v. State*, 18 S.W.3d 813, 827 (Tex. App.—Fort

9

Worth 2000, pet. ref'd). Here, Malone called no witness to controvert the testimony of the officer, and the evidence did not raise a fact issue concerning consent, reasonable suspicion, or voluntariness. Thus, there was no factual dispute of how the evidence was obtained; therefore, the trial court was not required to include the requested instructions under article 38.23(a). *See Thomas*, 723 S.W.2d at 707; *Garza*, 18 S.W.3d at 827.

## B. SUFFICIENCY

In his fifth point, Malone argues that the evidence was insufficient to show that he possessed the cocaine with the intent to deliver it. We view all the evidence in the light most favorable to the jury's verdict and determine whether any rational fact-finder could have found Malone's intent beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

Malone recognizes that intent may be proven circumstantially but contends that "[t]he State could have done much more to prove intent to deliver." Our question is not whether the State should have offered more evidence than it did; our question is whether the evidence the State did offer was sufficient to satisfy due process. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (concluding intermediate appellate court "did not consider all of the evidence, and in conducting its review of the evidence, . . . improperly used a 'divide-and-conquer' approach, separating each

10

piece of evidence offered to support Appellant's conviction, followed by speculation on the evidence [the] State did not present").

The evidence of Malone's intent was sufficient. Malone was arrested in a high-crime area at a time of day when it could reasonably be expected that he was driving drunk. Malone was the lone occupant of a car in which a substantial amount of cocaine was found. Some of the cocaine was in a large lump; the rest had been split into smaller portions and bagged. A razor with cocaine residue was also found. One of the responding officers testified that the amount of cocaine found and the way it was packaged were more consistent with delivery than with personal use. This evidence allowed a rational jury to reasonably find that Malone possessed the cocaine with the intent to deliver. *See, e.g.*, *Harris v. State*, No. 07-17-00292-CR, 2019 WL 1908124, at *3 (Tex. App.—Amarillo Apr. 29, 2019, no pet.) (mem. op., not designated for publication); *Hicks*, 255 S.W.3d at 355. We overrule point five.

### C. ADMISSION OF PRIOR OFFENSES AT PUNISHMENT

In his final two points, Malone argues that the trial court abused its discretion by overruling his objections to and admitting his prior felony convictions from Iowa because they were not properly authenticated and because the State failed to sufficiently link him to the convictions. We review the admission of prior-conviction evidence at the punishment phase of trial for an abuse of discretion. *See Hicks v. State*, No. 06-02-00064-CR, 2003 WL 21823420, at *5 (Tex. App.—Texarkana Aug. 8, 2003, pet. dism'd, untimely filed) (not designated for publication).

11

During the punishment phase of trial, the State or the defendant may introduce evidence that the trial court deems relevant to sentencing, including the defendant's prior criminal record. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3. A state's records of a defendant's prior convictions are admissible if they are properly authenticated and if the convictions are sufficiently connected to the defendant. *See Reed v. State*, 811 S.W.2d 582, 586–87 (Tex. Crim. App. 1991) (op. on reh'g); *Phariss v. State*, 194 S.W.2d 1007, 1007 (Tex. Crim. App. 1946); *Hicks*, 2003 WL 21823420, at *5–6.

Malone asserts that the Iowa records were not authenticated, and therefore were inadmissible, because they did not have seals showing they were official copies of the original records. *See* Tex. R. Evid. 902(1). But the Iowa records were certified and signed (1) by an officer of the Iowa Medical and Classification Center, attesting that the criminal records pertained to Malone, and (2) by the presiding judge of the Iowa District Court, attesting that the officer's signature was genuine. *See* Tex. R. Evid. 902(2). These records were sufficiently authenticated to justify their admission. *See Billington v. State*, No. 08-12-00144-CR, 2014 WL 669555, at *2 (Tex. App.—El Paso Feb. 19, 2014, no pet.) (not designated for publication).

Malone also contends that the State did not sufficiently show that the Iowa records were linked to him. When an authenticated copy of a defendant's criminal record is admitted into evidence, the State must show by independent evidence that the defendant is the person shown in those records. *See Beck v. State*, 719 S.W.2d 205,

12

210 (Tex. Crim. App. 1986); *Woods v. State*, No. 02-17-00367-CR, 2018 WL 5289461, at *6 (Tex. App.—Fort Worth Oct. 25, 2018, pet. ref'd) (mem. op., not designated for publication). The State has many options by which to link a conviction to the defendant. *Flowers v. State*, 220 S.W.3d 919, 921–22 (Tex. Crim. App. 2007). One such way is through documentary proof, such as a judgment, that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 922. In any event, the trier of fact has the responsibility to fit the pieces of the identity puzzle together to determine if they sufficiently form a picture of the defendant as the person in the records. *Id.* at 923.

During punishment, the State called as a witness a records manager for the Tarrant County Sheriff's Office, Stacy Turner. Turner testified to and the trial court admitted Malone's jail records from the Tarrant County Jail, which included Malone's birthdate, social-security number, county-identification number, picture, fingerprints, and general physical characteristics. Malone did not object to Turner's testimony about the records or to the admission of those records. Turner stated that she occasionally testifies in order to match Tarrant County's jail records to "records from other areas." The State offered and the trial court admitted several exhibits regarding the Iowa convictions:

- the Iowa officials' attestations as to the authenticity of the records;

- a fingerprint card;

- a mug shot;

13

- a 2009 judgment and sentence for two counts of possession of a controlled substance with the intent to deliver, for "carrying weapons," and for theft; and

- a 1981 sentencing order finding Malone guilty of "Voluntary Absence."

Turner matched the identifying information in the Iowa records to Malone's information in the Tarrant County records. She also explained that Tarrant County would not put an identification number on a document unless the person's fingerprints had been analyzed and found to match the fingerprints associated with that number. The evidence offered by the State was sufficient to allow the fact-finder to compare the information in the Tarrant County records to the information in the Iowa records and to reasonably determine that Malone was the person referred to in the authenticated Iowa documents. *See, e.g.*, *Posada v. State*, No. 06-16-00184-CR, 2017 WL 3205580, at *3–4 (Tex. App.—Texarkana May 19, 2017, pet. ref'd) (mem. op., not designated for publication); *Billington*, 2014 WL 669555, at *3–4; *Yeager v. State*, 737 S.W.2d 948, 951–52 (Tex. App.—Fort Worth 1987, no pet.).

The trial court did not abuse its discretion by admitting the Iowa records over Malone's authentication objection. And the State sufficiently linked Malone to those records through matching identifying information in Tarrant County's records and through the testimony of a Tarrant County records custodian. This evidence raised a fact issue regarding Malone's identity, which was for the fact-finder to resolve. We overrule points six and seven.

14

## III. CONCLUSION

The trial court did not err by denying Malone's motion to suppress or by denying his requested jury instructions on the issue. The evidence was sufficient to support the jury's verdict that Malone possessed the cocaine with the intent to deliver. Finally, the trial court did not abuse its discretion by admitting the properly authenticated documents regarding Malone's prior convictions from Iowa, which the State thereafter sufficiently linked to him. We have overruled Malone's issues on these bases and now affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 22, 2019