**John Quincy DOTY, Appellant,**

v.

**STATE of Texas, State.**

**No. 2–89–010–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 26, 1991.

Discretionary Review Refused
March 4, 1992.

Terry M. Casey, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and C. Chris Marshall, Helen T. Dhooghe and Edwin Youngblood, Asst. Crim. Dist. Attys., Fort Worth, for appellee State.

Before JOE SPURLOCK, II, LATTIMORE and MEYERS, JJ.

## OPINION

LATTIMORE, Justice.

John Quincy Doty, appellant, was charged with theft of property the value of which was at least $750 but less than $20,000. Trial was to a jury which returned a verdict of guilty. During the punishment phase of the trial, the jury found the enhancement paragraph to be true and assessed punishment at twenty years in the Texas Department of Corrections.[1] Appellant has perfected his appeal to this court.

We affirm.

### Statement of Facts

The record reflects that appellant and another man rapidly departed the Tandy Center Dillard's store with twenty-one pairs of men's dress slacks, for which they had not paid. Doty and his accomplice fled on foot toward their get-away car driven by a third man. The thieves were pursued by two Dillard's salesmen. The thieves dropped the pants in an effort to get away. Both salesmen noted appellant and his accomplices escaped in a maroon Mercury which had a dealer's license tag in the rear window. Each salesman memorized the dealer tag number.

At the same time, Fanning and his wife were stopped at a red light a short distance

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

away from the glass doors through which the running men made their escape. The Fannings observed the two men rapidly leaving the store. They saw the two salesmen pursue the thieves. The Fannings watched the thieves drop the clothing and jump into a maroon car which had a dealer's tag in the back window. Fanning testified that he saw three heads in the get-away car. He testified that he followed the get-away car and observed the maroon vehicle pull into the parking lot at McCloud's Grocery Store. Fanning proceeded in his vehicle past McCloud's Grocery Store and continued down the street.

After Fanning had proceeded some distance down the street he saw a patrol car and flagged the officer down. He related to the officer what he had seen. He last saw the patrol car heading in the direction of the McCloud's Grocery Store.

The officer whom Fanning had stopped was called to testify. The officer related the events which occurred subsequent to being stopped by Fanning. He testified that after he had been alerted by Fanning, he proceeded in his patrol car toward the store in question.

The officer testified that it took him forty-five seconds from the time he had been alerted until he reached the store. When he arrived at the store he observed the suspect vehicle, which had been described to him, parked in the parking lot.

During the time it took the officer to drive to the store, a message was displayed on the mobile data unit in the patrol car. The message indicated a theft had occurred at the Dillard's store. The license tag number on the display matched the license tag number of the suspect vehicle. At this time the officer advised the dispatcher that he had located the suspect vehicle. The officer got out of his patrol unit and proceeded into the store.

Once inside the store, the officer observed three black males and the store clerk. He approached the suspects and asked them for their identification. The officer identified appellant at trial as being one of the persons whom he had observed inside the store. Doty was wearing a white cap at the time the officer observed him in the store.

The police officer then requested the three men to lay down on the floor and he awaited the arrival of backup officers. When the backup officers arrived, each suspect was placed in a separate patrol vehicle. The officer then searched the suspect vehicle for any stolen property or merchandise. His search did not reveal any stolen items. He instructed one of his backup officers to go to the Dillard's store, get the witnesses to the crime and bring them to the scene of the arrest. Subsequently the backup officer returned with two witnesses. These witnesses were the salesmen who had pursued the thieves.

The witnesses were asked to identify the suspects while they remained seated in the separate squad cars. At that time the witnesses were unable to identify any of the thieves. Then appellant and the other suspects were removed from the police cars and both witnesses positively identified Doty as one of the thieves.

### Appellant's Points of Error

In appellant's first point of error he complains the court below erred in denying appellant's objection to the impaneling of a jury from which the State had peremptorily stricken all black potential jurors. Appellant complains that such action by the trial court violated his sixth and fourteenth amendment rights under the United States Constitution and article I, sections 10, 15, and 19 of the Texas Constitution.

It is uncontroverted that the jury panel contained five black potential jurors. Of these five jurors, one was excused and the other four were removed via the State's use of its peremptory strikes. The defense counsel made a *Batson*[2] challenge.

The trial court held a hearing and concluded that the reasons presented by the State for which it had struck each of the potential jurors in question indicated to the

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

trial court that no *Batson* violation was intended and overruled appellant's motion.

In response to appellant's complaint upon appeal that a *Batson* violation occurred, the State points out that the appellant's *Batson* challenge at trial was untimely. The record reflects that the voir dire per-emptory challenges and the challenges for cause were exercised in the normal fashion. The jury was then sworn in. Thereafter, the remainder of the panel was excused to the central jury room while the jury was sent to the trial court's jury room. At that time, Doty challenged the composition of the jury as being in violation of *Batson*. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ Article 35.261(a) of the Texas Code of Criminal Procedure which became effec-tive on August 31, 1987, states that in order for a *Batson* objection to be timely, such must be made "before the court has impanelled the jury." TEX.CODE CRIM.PROC. ANN. art. 35.261(a) (Vernon 1989). Subse-quent to the enactment of this new rule, the Texas Court of Criminal Appeals held that a *Batson* objection must be made be-fore the jury is sworn in to be timely. *Cooper v. State*, 791 S.W.2d 80, 81–82 (Tex. Crim.App.1990); *see also Hill v. State*, 787 S.W.2d 74, 75–77 (Tex.App.—Dallas 1990, pet. granted) (opinion on reh'g). In the present case, Doty's objection to the com-position of the jury was not on record until after the jury had been sworn in. A thor-ough review of the statement of facts indi-cates that the defense counsel may have attempted to present something to the trial judge prior to the jury being sworn in and the balance of the panel sent on their way to the central jury room. However, the legislature and the Texas Court of Criminal Appeals has tied the hands of this appellate court based upon the new bright-line rule as enumerated at article 35.261(a) of the Texas Code of Criminal Procedure and as clarified in *Cooper*. *Cooper*, 791 S.W.2d at 81–82. The record, as stated *supra*, does not clearly reflect that Doty's objection was made known before the jury was im-panelled. Hence, we hold Doty's *Batson* objection was untimely.

■ In addition, Doty argues that the State waives any objection to an untimely *Batson* motion when the State does not object and bring to the trial court's atten-tion the untimeliness of the *Batson* motion. However, in light of the Texas Court of Criminal Appeals' decision in *Cooper v. State*, this claim is without merit. *Id.* at 83–84 (opinion on reh'g). On the State's motion for rehearing, the court held that the *Batson* error was not preserved for appellate review, where the *Batson* motion was made after the jury was sworn, not-withstanding the fact that the State failed to object to timeliness of the motion, and the trial court held a hearing on the motion. *Id.* We hold that the State was not re-quired to object to the untimely nature of Doty's *Batson* motion and therefore the State did not waive such argument on ap-peal. Appellant's first point of error is overruled.

In his second and third points of error Doty complains the trial court erred in fail-ing to suppress the out-of-court and in-court identification of appellant because the procedure used was unnecessarily sug-gestive and created a substantial likelihood appellant was misidentified.

■ The record reflects appellant was identified by both salesmen. This identifi-cation took place in the parking lot of the McCloud's Grocery Store. While we agree with appellant's statement of the law con-cerning the dangers of misidentification in cases involving both pretrial and in-court identifications, we are not convinced these identifications, when considered in the to-tality of the circumstances, were so unrelia-ble as to be inadmissible. *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Garza v. State*, 633 S.W.2d 508 (Tex.Crim.App. [Panel Op.] 1981); *Jackson v. State*, 657 S.W.2d 123 (Tex.Crim.App.1983).

Appellant contends the show up identifi-cation in which he was identified was not only unduly suggestive, but that misidenti-fication actually occurred. Appellant's complaint primarily rests upon the fact he was identified in the parking lot where he was arrested rather than in a lineup at the

police station which was only blocks away. Further, he contends that the witnesses only had a limited time in which to view the actors as they fled the scene. Additionally, due to the distracting nature of a theft in process, the witnesses' attention was less than ideal. Finally, appellant contends a misidentification occurred because the witnesses were initially reluctant to identify appellant as he sat in the back of a patrol unit.

While we concede that what Doty has said might be accurate, he neglected to mention some rather key portions of the record. The record reflects that within twenty minutes of the theft, the primary eyewitnesses were taken by the police to the convenience store where a show up identification occurred. The officer who conducted the show up identification testified that he used this procedure because a confrontation made within a short time and in the near vicinity of the offense produced a more reliable identification. The salesmen testified that no one suggested they should identify these men as the thieves. Although it is true the witnesses were somewhat reluctant to identify appellant as he sat in the rear of the police vehicle, both witnesses immediately identified him when he was removed from the car.

We are inclined to agree with appellant that this method of identification is somewhat extraordinary. However, we are convinced that the evidence surrounding this identification is very extraordinary. The record reflects that both salesmen got a good look at the thieves while the robbery was in process. All of the witnesses to the crime were able to precisely identify the get-away car complete with license tag number. Two of the witnesses followed the get-away car from the scene of the crime to the very place where the suspects were arrested only minutes later. A police officer was flagged down and advised of the whereabouts of the felons, by an eyewitness, so rapidly after the crime had been committed that it was not yet reported by the victims. When the officer arrived at the location where the felons were last seen, he observed the get-away car which had been positively identified and its description appeared on the screen of the patrol car's mobile data unit only moments before. The number of persons within the store (who were not employees of the store) happened to directly coincide with the number of felons which had been reported as having fled the scene of the crime.

When considering the totality of the circumstances with regard to the evidence and when considering that within one-half hour of the commission of the crime the get-away car is identified three times and appellant is identified twice by the eyewitnesses to the crime, we find appellant's contention that the method of identification was impermissibly suggestive and it resulted in a high probability of misidentification unsupported by the record. Doty's second and third points of error are overruled.

■ In appellant's fourth point of error he asserts that the trial court erred in overruling his objection to the State's improper jury argument. Doty complains that during final argument on his guilt or innocence the prosecutor stated that "I wouldn't be trying this man for something he didn't do because I wouldn't have the evidence." At that time appellant's counsel objected to the argument concerning what the prosecutor would or would not do. Appellant complains that this argument injected the prosecutor's personal opinion as to the guilt of the defendant. Appellant complains that a comment of that nature is highly inflammatory and improper under the standards set out in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973). Additionally, appellant supports his contention of improper jury argument with the authority set down in *Robillard v. State*, 641 S.W.2d 910 (Tex.Crim.App. [Panel Op.] 1982) and *Menefee v. State*, 614 S.W.2d 167 (Tex.Crim.App.1981) (opinion on reh'g).

*Alejandro* states that in order for jury argument to be proper, it must fall within the areas of: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro*, 493 S.W.2d at 231.

Doty informs us that the case before us most closely resembles *Menefee* and that here, as in that case, the prosecutor not only injected his own opinion about the guilt of the accused, but also did it in a manner which bolstered the State's witness. In *Menefee* the court of criminal appeals held that the prosecutor's injection of his personal opinion concerning the credibility of a critical witness was clearly harmful error. *Menefee*, 614 S.W.2d at 168.

Turning to the case before us, we must first place the prosecutor's argument in its proper context. The record reflects the argument made by the prosecutor in the following manner:

[PROSECUTOR]: Mr. Moore wants to bring up issues such as, "Well, Officer Edwards goes out to this convenience store and just picks up any three guys he finds there in the store, puts them under arrest and that's how they were charged." That's BS and you know it and I know it. Because, hey, if Chris Hutchins and Bud Thomas came out there and said, "That ain't the guy. We can't identify the guy," we wouldn't be here.

The record reflects that appellant's trial counsel, Mr. Moore, in his final argument to the jury, stated: "The police just go in there and drag three guys out and throw them in a patrol car, each one of them." The record reflects that the defense counsel was attempting to raise the inference that the three individuals who had been arrested at the McCloud's Grocery Store were not the same persons as those who escaped in the get-away car. Under *Alejandro*, the State was entitled to answer that argument.

When viewing this argument in its proper context, we feel that it is best characterized as an answer to the defense's final argument at trial and thus appropriate. We hold that this was not an impermissible jury argument. Accordingly, Doty's fourth point of error is overruled.

In appellant's fifth and final point of error he maintains that the trial court erred in overruling his objections to the State's improper jury argument which shifted the burden of proof to the defendant and commented upon the defendant's failure to testify.

Appellant complains of the State's argument to the jury concerning the ownership of the car in question. In its closing argument the State commented that no evidence had been produced to suggest that the car did not belong to appellant. The prosecution indicated that had such evidence existed the defense would certainly have brought that before the jury. Appellant objected that the State was attempting to shift the burden of proof. The trial court overruled that objection.

■ For a statement to constitute a comment on the failure of the defendant to testify, the language used must be manifestly intended or of such a character that the jury would naturally and necessarily interpret it as a comment on the defendant's failure to testify. *Losada v. State*, 721 S.W.2d 305, 313 (Tex.Crim.App.1986). It is not sufficient that the language might be construed as an implied or indirect allusion thereto. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App.1982), *cert. denied*, 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983).

■ The record reflects that the prosecutor made the following statements of which appellant complains:

You know something else that is curious to me: If there was any evidence to suggest that that wasn't that man's car, don't you think that they might have brought it to you?

. . . .

. . . Oh yeah, ain't nobody here talking about that issue. We are talking about proving up the case. And if you remember when Edwin was out there talking to you on Tuesday and what you understood, said you look at the evidence that comes in to you at trial. Don't sit there guessing about what is not here. If it's supposed to be here, we would have brought it and/or he would have brought it.

**924**

We are not prepared to say that the argument in question was manifestly intended or of such a character that the jury would naturally and necessarily interpret it as a comment on the defendant's failure to testify. Rather, we think it is merely a summary of the evidence which was presented at trial. Or more directly, an argument that the jury should not be concerned with evidence that was not presented at trial. Under *Alejandro* a comment of this nature is permissible.

We hold that this argument, presented to the jury by the State, was not impermissible. Therefore, the trial court did not err in overruling appellant's objections to this argument. Appellant's fifth and final point of error is overruled.

The decision of the trial court is affirmed.