COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
 
NOS.  
2-02-409-CR
                                                  2-02-410-CR
 
CHRISTOPHER BEAU HARRIS                                                 APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM THE 
362ND DISTRICT COURT OF DENTON COUNTY 
 
------------
 
OPINION
 
------------
I. Introduction
        A jury found Appellant Christopher Beau Harris (“Harris”) guilty of two 
counts of sexual assault and assessed his punishment for each count at eight 
years’ confinement and a $4,000 fine. The trial court ordered the sentences 
served concurrently. In three points on appeal, Harris contends that the trial
court violated his state and federal constitutional right to a fair trial by allowing
the State to ask improper commitment questions during voir dire, by permitting
the testimony of a witness who had violated “the Rule,” and by overruling his
objections to improper prosecutorial jury argument. We will affirm. 
II. Background Facts
        In the fall of 2001, Brandy Cohrs (“Cohrs”) was visiting the Londonderry 
Oaks Apartments in Denton, Texas, when she met and had a brief conversation 
with Harris. Harris lived at the apartments and was employed as a maintenance 
man for the apartment complex. Approximately five days after her initial 
conversation with Harris, Cohrs called Harris and agreed to visit him at his 
apartment. After Cohrs arrived at Harris’s apartment, Harris and Cohrs 
watched television and subsequently engaged in consensual sex. Cohrs also 
engaged in consensual sex with Harris on at least one more occasion. 
However, during the course of the third sexual encounter, the sex became 
nonconsensual when Cohrs voiced her opposition to Harris by “crying and 
saying no.” Approximately five days later, on or about October 14, 2001, 
Harris called Cohrs, and she agreed to come to his apartment. After arriving at 
Harris’s apartment, Cohrs and Harris sat on the couch together and watched 
television. At some point, Harris attempted to take off Cohrs’s pants, to which 
she responded, “I don’t think we should have sex.” Although Cohrs attempted 
to keep her pants pulled up, she eventually lost her grip, and Harris was able to 
pull both her pants and her underwear down. Harris told Cohrs that he wanted 
to be inside her, and although Cohrs told him “no” at least three times, Harris 
nonetheless sexually assaulted her. During the assault, Cohrs did not struggle 
because she was concerned that Harris would become violent, but she 
continued to tell Harris “no.” Subsequent to the assault, Harris called Cohrs on 
several occasions, but Cohrs never saw Harris in person again. On or about 
November 7, 2001, Cohrs reported the assault to the police upon the insistence 
of a friend. 
        Meanwhile, in October 2001, Cassie Hayes (“Hayes”) moved into the 
Londonderry Oaks Apartments and became acquainted with Harris through a 
mutual friend, Joe Rodriguez (“Rodriguez”). Thereafter, on occasion Hayes and 
Rodriguez would go to Harris’s apartment to talk and to hang out. On 
November 15, 2001, Hayes and Rodriguez went over to Harris’s apartment for 
a short period of time, wherein Hayes mistakenly left her purse on his couch. 
Later that evening, Harris telephoned Hayes on her cell phone to tell her that 
she had forgotten her purse, and she walked across the complex to his 
apartment. As Hayes entered the apartment, Harris shut the door behind her 
and locked the deadbolt. Hayes immediately asked Harris, “What the hell are 
you doing?” Harris responded, “Just relax, girl” as he pushed her down on the 
couch by her shoulders and positioned himself on top of her. Although Hayes 
repeatedly told Harris to stop and get off of her, Harris continuously kept telling 
her to relax. Harris pinned Hayes by holding her down with his entire body 
weight, and sexually assaulted her. Eventually, Harris received a call on his cell 
phone and sat up on the end of the couch to talk. While Harris was on the 
phone, Hayes got up and went to the door. As Hayes was unlocking the 
deadbolt, Harris put his hand in front of her and said, “Wait, girl,” but she was 
nonetheless able to leave his apartment. For several weeks, Hayes did not 
report the assault to the anyone, including the police, but she constantly feared 
Harris because he was the maintenance man and had access to a passkey to 
her apartment. After receiving a late-rent notice inside her apartment, Hayes 
reported the assault to Brendan Durkin (“Durkin”), the head maintenance man, 
and Emily Bell, the apartment manager. Thereafter, in December 2001, Hayes 
reported the assault to the police and identified Harris as her assailant. 
III. Improper Commitment Questions During Voir Dire
        In his first point, Harris contends that the trial court denied him a fair trial 
by allowing the State to ask three improper commitment questions during voir 
dire. Harris complains that the State improperly committed prospective jurors 
to convict based upon the following three questions: 
(1) “If--[W]ould you disbelieve a witness simply because there was
a delay in the reporting of the crime?”



 
(2) “Does anybody believe that they would not be able to find 
somebody guilty of a criminal offense without having medical 
evidence?”
 


 
(3) “How many people if selected on the jury could not find 
somebody guilty based upon the testimony of just one witness, 
even if you believed that one witness beyond a reasonable doubt?” 

The State contends that the aforementioned questions were proper because all
three of the questions could lead to a valid challenge for cause.
A. Standard of Review
        The trial court has broad discretion over the process of selecting a jury. 
Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Therefore, 
appellate courts should not disturb a trial court’s ruling on the propriety of a 
particular question during voir dire absent an abuse of discretion. Id.; Davis v. 
State, 894 S.W.2d 471, 474 (Tex. App.—Fort Worth 1995, no pet.). A trial 
court abuses its discretion if it prohibits a proper question regarding a juror's 
views on an issue applicable to the case. Howard v. State, 941 S.W.2d 102, 
108 (Tex. Crim. App. 1996). Additionally, a trial court abuses its discretion if 
it allows a question that attempts to commit the juror to a particular verdict 
based on a set of circumstances analogous to the case in question. See Atkins 
v. State, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997). However, if the law 
requires a certain type of commitment from jurors, an attorney may ask the 
prospective jurors whether they can follow the law in that regard. Standefer 
v. State, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). 
        B. Analysis of the Questions 
        In Standefer, the Texas Court of Criminal Appeals articulated a three-prong test for determining when a voir dire question calls for an improper 
commitment. Id. at 179-84. The first prong of the test requires trial courts to 
determine whether a particular question is a commitment question. Id. at 179. 
If the court determines that a particular question is a commitment question, the 
court must then decide whether the question gives rise to a valid challenge for 
cause. Id. at 181-82. If the question meets the “challenge for cause” 
requirement, the court must then determine whether the question includes only 
those facts necessary to test whether a prospective juror is challengeable for 
cause. Id. 
        1. Prong One—Were the State’s Questions “Commitment Questions”? 
        A commitment question is a question that “commit[s] a prospective juror 
to resolve, or to refrain from resolving, an issue a certain way after learning a 
particular fact.” Id. at 179. Commitment questions that attempt to bind 
prospective jurors to a position, using a hypothetical or otherwise, are improper 
and serve no purpose other than to commit the jury to a specific set of facts 
before the presentation of any evidence at trial. Atkins, 951 S.W.2d at 789. 
However, as acknowledged by the Texas Court of Criminal Appeals, the rule 
prohibiting the use of commitment questions during voir dire is easily stated but 
not necessarily easily applied. Standefer, 59 S.W.3d at 179. In Lydia v. State, 
the court of criminal appeals recently clarified the scope of the “commitment 
question” rule, holding that the question “Do each of you feel as though you 
could evaluate a witness and his testimony and decide if he’s being truthful 
without automatically dismissing his testimony because of some criminal 
history?” was a commitment question. 109 S.W.3d 495, 498-99 (Tex. Crim. 
App. 2003). The court reasoned that the question attempted to commit the 
prospective jurors to resolve the issue of witness credibility based on a 
particular fact—the witness’s criminal history. Id. at 499. 
        In the present case, the State’s questions required prospective jurors to 
resolve the issue of whether they would automatically be predisposed towards 
one view on witness credibility based on the witness’s delay in reporting the 
crime, whether they could convict a defendant where there was no medical or 
scientific evidence presented, and whether they could convict a defendant 
based solely upon the testimony of one witness. Therefore, pursuant to the 
reasoning set forth in Lydia, all three questions posed by the State were 
commitment questions because they required prospective jurors to commit to 
convict a defendant or to resolve issues concerning witness credibility under a 
particular set of facts—the witness’s delay in reporting the crime, the absence 
of medical or scientific evidence, and the testimony of only one witness. Id. at 
499; see also Standefer, 59 S.W.3d at 180 (holding that question “Could you 
consider probation in a case where the victim is a nun?” was a commitment 
question). However, whether the questions were proper requires further inquiry 
to determine if each question could give rise to a valid challenge for cause. 
        2. Prong Two—Did the State’s Questions Lead to Valid Challenges? 
        The primary objective of voir dire examination is to assemble a 
“competent, fair, impartial, and unprejudiced jury to judge the facts of the 
case.” Staley v. State, 887 S.W.2d 885, 896-97 (Tex. Crim. App. 1994), cert. 
denied, 514 U.S. 1020 (1995). Accordingly, the Texas Code of Criminal 
Procedure allows either side to challenge a juror for cause when the challenging 
side can show the juror is incapable or unfit to serve on the jury. Tex. Code 
Crim. Proc. Ann. art. 35.16 (Vernon Supp. 2004). A prospective juror may be 
challenged for cause if he possesses a bias or a prejudice in favor of or against 
the defendant that prevents him from impartially judging the credibility of a 
witness. Id. art. 35.16(a)(9). However, a prospective juror is not challengeable 
for cause based on bias simply because he would be more skeptical of a certain 
type of witness. Jones v. State, 982 S.W.2d 386, 389 (Tex. Crim. App. 
1998), cert. denied, 528 U.S. 985 (1999). A challenge for cause is only proper 
based on bias if a prospective juror harbors an automatic predisposition toward 
one view of witness credibility based upon knowledge of a certain fact about 
the witness. See, e.g., Hernandez v. State, 563 S.W.2d 947, 950 (Tex. Crim. 
App. 1978) (op. on reh’g) (holding that prospective juror is challengeable for 
cause because he did not believe a police officer would ever lie on the stand); 
Edwards v. State, 882 S.W.2d 493, 495 (Tex. App.—Houston [1st Dist.] 1994, 
no pet.) (recognizing that prospective juror is challengeable for cause if he 
indicates that he would automatically disbelieve the testimony of a witness 
shown to have previously lied). 
        In the present case, the State inquired as to whether any of the 
prospective jurors would disbelieve a witness simply because the witness 
delayed in reporting the crime. The question as posed did not focus on the 
level of credibility that the prospective jurors would give the witness’s 
testimony, but rather sought to ascertain whether any of the prospective jurors 
harbored any automatic predispositions or held any extreme or absolute 
positions regarding the credibility of a witness due to a witness’s delay in 
reporting a crime. Thus, the potential answers to the first question would lead 
to a challenge for cause based on a juror’s bias. See Tex. Code Crim. Proc. 
Ann. art. 35.16(a)(9). 
        The second question asked by the State during voir dire was used to 
identify potential jurors who would not convict a defendant absent scientific or 
medical evidence even if they believed the testimony of the witnesses. 
Although the State may not bind a prospective juror to a specific set of facts, 
the State is permitted to determine whether a prospective juror will require 
evidence the law does not require to convict a defendant. Garza v. State, 18 
S.W.3d 813, 820 (Tex. App.—Fort Worth 2000, pet. ref’d). Under Texas law, 
a conviction for a sexual assault may be attained absent any scientific or 
medical evidence. Id. Moreover, as the record indicates, at least four of the 
prospective jurors were removed for cause because they indicated that they 
could not convict a defendant without some scientific or medical evidence, 
even if the State otherwise proved its case beyond a reasonable doubt. 
Therefore, the State’s second question was a proper inquiry because it could 
and did give rise to a valid challenge for cause. 
        The State’s third question focused on whether the prospective jurors 
could convict a defendant based on the testimony of only one witness if they 
believed that witness beyond a reasonable doubt. The State may challenge a 
juror for cause when the juror would hold the State to a higher standard than 
“beyond a reasonable doubt.” Coleman v. State, 881 S.W.2d 344, 360 (Tex. 
Crim. App. 1994), cert. denied, 513 U.S. 1096 (1995). Consequently, a 
prospective juror is properly subject to challenge for cause if he indicates that 
he could not convict based on the testimony of one witness, even if he believed 
that witness beyond a reasonable doubt. See Castillo v. State, 913 S.W.2d 
529, 533 (Tex. Crim. App. 1995). However, a prospective juror is not 
challengeable for cause merely for setting their threshold for reasonable doubt 
higher than the minimum required by law, e.g., a prospective juror who would 
require the testimony of more than one witness to be convinced beyond a 
reasonable doubt. See id. In the present case, the State was entitled to inquire 
as to whether a prospective juror could abide by the standard of proof set by 
the law or if the juror would hold the State to a higher standard. See id. at 
534-35. A negative response to the question posed by the State would 
properly give rise to a valid challenge for cause. See id. at 533. 
        Because we have determined that a negative answer to each of the 
State’s three questions would lead to a proper challenge for cause, we proceed 
to the third prong of Standefer. 
        3. Prong Three–Did the State’s Questions Include Only Necessary Facts?
        Even if the State’s three questions meet the challenge for cause 
requirement, the questions may be improper if they include facts in addition to 
those necessary to establish a challenge for cause. Standefer, 59 S.W.3d at 
182. The Standefer Court referenced Atkins as a decision for which a voir dire 
question impermissibly supplied more facts than necessary to sustain a 
challenge for cause. Id. In Atkins, the State asked the prospective jurors the 
following question: “If the evidence, in a hypothetical case, showed that a 
person was arrested and they had a crack pipe in their pocket, and they had a 
residue amount in it, and it could be measured, and it could be seen, is there 
anyone who could not convict a person, based on that--.” 951 S.W.2d at 789. 
The Texas Court of Criminal Appeals stated that, although the State could have 
permissibly questioned the jurors on their ability to follow a law that holds a 
person guilty of possession even if the possession involved only a residue 
amount, the use of non-necessary facts supplied by the State—arrest, 
possession, crack pipe, item found in defendant’s pocket—rendered the 
question an improper commitment question. See id. at 789-90. The court 
reasoned that the question as posed by the State served “no purpose other than 
to commit the jury to specific set of facts prior to the presentation of any 
evidence at trial.” Id. at 789. 
        In the present case, the State’s three questions did not attempt to 
commit the prospective jurors in conjunction with specific facts of the case as 
in Atkins. The questions were not fact intensive, but rather only included those 
facts necessary to determine whether a prospective juror was challengeable for 
cause. Therefore, the State’s three questions pass constitutional muster under 
the third prong of Standefer. 
        C. Proper Commitment Questions 
        Accordingly, we hold that the trial court did not abuse its discretion by 
allowing the State to ask the three questions during voir dire. The State’s 
questions were not designed to bind the prospective jurors to a position based 
on a particular set of facts, but only sought to elicit whether the jurors could 
impartially judge the credibility of a witness and follow the law. Therefore, we 
overrule Harris’s first point. 
IV. Violation of “The Rule” 
        In his second point, Harris contends that the trial court denied him a fair 
trial by permitting Tim Phillips (“Phillips”), an investigator for the Denton County 
District Attorney’s Office, to testify at the rebuttal stage of trial because he 
violated rule 614 of the Texas Rules of Evidence (“the Rule”). He complains 
that Phillips violated the Rule by talking to defense witness Rodriguez and by 
being present in the courtroom during a majority of the trial, including part of 
Rodriguez’s testimony. The State contends that the trial court properly allowed 
Phillips to testify over Harris’s objection because Phillips had no personal 
knowledge of the offenses and there was no reason to believe he would be 
called as a witness at the time the Rule was invoked. 
        A. The Rule 
        The Rule provides for the sequestration of witnesses from the courtroom 
during trial. Tex. R. Evid. 614. The purpose of the Rule is to prevent 
corroboration, contradiction, and the influencing of witnesses. Minor v. State, 
91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref’d). Upon 
invocation of the Rule, a witness should not listen to testimony in the case or 
converse or comment about the case to any other person without the court’s 
permission. Id. Although the trial court is obligated to exclude witnesses from 
the courtroom during the testimony of other witnesses, the trial court’s decision 
concerning a witness who has violated the Rule is discretionary. Minor, 91 
S.W.3d at 829. Accordingly, if the Rule is violated, the trial court may, taking 
into consideration all of the circumstances, allow the testimony of the potential 
witness, exclude the testimony, or hold the violator in contempt. Bell v. State, 
938 S.W.2d 35, 50 (Tex. Crim. App.1996), cert. denied, 522 U.S. 827 (1997). 
We review a trial court’s decision regarding a violation of the Rule under an 
abuse of discretion standard. Guerra v. State, 771 S.W.2d 453, 474-75 (Tex. 
Crim. App. 1988), cert. denied, 492 U.S. 925 (1989). 
        B. Analysis of a Violation of the Rule 
        We perform a two-step analysis to ascertain whether a trial court has 
abused its discretion in allowing testimony by a witness who has violated the 
Rule. Minor, 91 S.W.3d at 829. The first step of the analysis requires us to 
determine what kind of witness was involved: (1) a person who was not 
intended to be called to testify and who was not connected to the case-in-chief 
but who has, due to events during trial, become a necessary witness; or (2) a 
person who had been sworn or listed as a witness in the case and either heard 
or discussed another’s testimony. Guerra, 771 S.W.2d at 476. A trial court 
does not abuse its discretion by allowing testimony from a witness who violates 
the Rule if the person was not anticipated to be called as a witness because he 
lacked personal knowledge regarding the offense and had no connection to 
either the State’s case-in-chief or the defendant’s case-in-chief. Id.; Minor, 91 
S.W.3d at 829; Phillips v. State, 64 S.W.3d 458, 459-60 (Tex. App.—Houston 
[1st Dist.] 2001, no pet.). On the other hand, if the witness had personal 
knowledge of the offense and was clearly anticipated as a witness, the second 
step of the analysis requires us to determine whether the witness actually 
conferred with or heard the testimony of another witness, and consequently, 
whether the witness’s testimony contradicted the testimony of a witness he 
actually heard from the opposing side or corroborated the testimony of another 
witness he actually heard from the same side on an issue of fact bearing upon 
the issue of guilt or innocence. Guerra, 771 S.W.2d at 475. If both of the 
above criteria are met, then the trial court abused its discretion by allowing the 
testimony of the witness. Minor, 91 S.W.3d at 829; Loven v. State, 831 
S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.). 
        In the present case, we must determine what kind of witness Phillips 
was. See Guerra, 771 S.W.2d at 476. Phillips became a State’s rebuttal 
witness due to a disputed issue concerning Rodriguez’s testimony. During 
Harris’s case-in-chief, Rodriguez testified that Hayes and Harris engaged in a 
consensual “sexual relationship” prior to the sexual assault. He also testified 
that Hayes had a bad reputation for truthfulness. On cross-examination, the 
State asked Rodriguez if, after he learned that Harris was arrested for sexually 
assaulting Hayes, he apologized to Hayes for having introduced her to Harris. 
Rodriguez replied, “No, the [District Attorney] talked to me about that earlier, 
and I don’t recall ever apologizing.” As a result, during rebuttal, the State 
called Phillips to testify regarding a conversation he and Rodriguez had about 
Rodriguez’s alleged apology. Over Harris’s objection, Phillips subsequently 
testified that Rodriguez admitted he had apologized to Hayes for the incident.        We hold that the trial court did not abuse its discretion in allowing Phillips 
to testify in violation of the Rule. After Rodriguez denied apologizing to Hayes, 
Phillips’s testimony became necessary to rebut Rodriguez’s assertion. 
Moreover, the record reflects that Phillips had no personal knowledge of the 
offenses and that there was no reason to believe he would be a witness in the 
trial at the time the Rule was invoked. Therefore, it is unnecessary for us to 
proceed to the second step of the analysis. Accordingly, we overrule Harris’s 
second point. 
V. Improper Jury Argument
        In his third point, Harris contends the trial court denied him a fair trial by 
overruling his objections to improper prosecutorial argument during the guilt-innocence stage of trial. Specifically, Harris complains that the State’s jury 
argument was improper because it shifted the burden of proof to the defense, 
attacked him over the shoulders of his counsel, and requested that the jury find 
him guilty due to community expectations. The State, however, maintains that 
the prosecutor’s argument was proper as a summation of the evidence, a 
response to the defense’s argument, and a plea for law enforcement. 
 
        A. Standard of Review 
        The purpose of closing argument is to facilitate the jury’s proper analysis 
of the evidence presented at trial in order to arrive at a just and reasonable 
conclusion based solely on the evidence. Barnes v. State, 70 S.W.3d 294, 308 
(Tex. App.—Fort Worth 2002, pet. ref’d). To be permissible, the State’s jury 
argument must fall within one of the following four general areas: (1) 
summation of the evidence; (2) reasonable deduction from the evidence; (3) 
answer to argument of opposing counsel; or (4) plea for law enforcement. 
Felder v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. 
App. 1973). If a jury argument exceeds the bounds of proper argument, the 
trial court’s erroneous overruling of a defendant’s objection cannot be reversible 
error unless, in light of the record as a whole, the argument had a substantial 
and injurious effect or influence on the jury’s verdict. Tex. R. App. P. 44.2(b); 
Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v. 
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. 
denied, 526 U.S. 1070 (1999). 
        B. Analysis of the State’s Jury Argument 
        Harris complains that the trial court erred by overruling his objections to 
three improper comments made by the prosecutor during closing arguments at 
the guilt-innocence stage of trial. Because Harris contends that each of the 
three comments was improper for different reasons, we will address each 
comment individually. 
        1. Proper Summation of the Evidence 
        Harris first argues that the trial court erroneously permitted the State to 
shift the burden of proof to the defense based on the following exchange: 
Look at the motive. Do [the girls] have any motive
whatsoever to come in here and tell you anything but the truth? 
No. They’re not gaining anything by coming here and talking about
this. Absolutely the most embarrassing thing has happened in their
life or will happen in their life, and they have to come talk about it. 
Do they have any motive? No. 
 
        The defense has subpoena power, the power to call any 
witness to come testify. Anyone to say anything on how it might 
be possible for these girls to have some sort of motive to come in 
here and lie. 
 
[DEFENSE COUNSEL]: I’ll object to the prosecutor’s attempt 
to shift the burden of proof. 
 
THE COURT: Overruled. [Emphasis added]. 

The State contends that the argument was a summation of the evidence that
was presented at trial.
        It is well-settled law that the State is entitled to comment on an 
accused's failure to produce testimony from sources other than himself when 
it is relevant to a disputed issue. Patrick v. State, 906 S.W.2d 481, 490 (Tex. 
Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996); Carrillo v. State, 566 
S.W.2d 902, 912 (Tex. Crim. App. [Panel Op.] 1978). Moreover, a 
prosecutor’s comment about the subpoena power of a defendant is proper if it 
refers to the defendant's failure to produce evidence from other sources. 
Livingston v. State, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987), cert. 
denied, 487 U.S. 1210 (1988). Accordingly, a prosecutor’s comment is 
improper only if it points to the absence of evidence that could be supplied only 
by the defendant’s testimony. Fuentes v. State, 991 S.W.2d 267, 275 (Tex. 
Crim. App.), cert. denied, 528 U.S. 1026 (1999). 
        In the present case, the State’s argument was not an improper comment 
because it did not require Harris to personally rebut the State’s argument. On 
the contrary, as evidenced by reference to the defense’s “subpoena power,” 
the State’s comment specifically pointed out the lack of testimony from other 
witnesses concerning any motive for Hayes and Cohrs to falsely accuse Harris 
of sexual assault. See Fogle v. State, 988 S.W.2d 891, 895 (Tex. App.—Fort 
Worth 1999, pet. ref’d) (recognizing that a defendant need not subpoena 
himself in order to secure his own testimony). The comment was merely a 
summation of the evidence presented at trial, coupled with an argument that 
the jury should not be concerned with evidence not presented at trial—any 
motive for the girls to lie about the assault. See Benn v. State, 110 S.W.3d 
645, 650-51 (Tex. App.—Corpus Christi 2003, no pet.) (holding that the 
State’s comment, “You ought to consider not only who you heard, but who you 
didn't hear,” was a summation of the evidence); Doty v. State, 820 S.W.2d 
918, 923-24 (Tex. App.—Fort Worth 1991, pet. ref’d) (holding that the State’s 
comment that if there was any evidence to support the defense’s theory,”don't 
you think that they might have brought it to you,” was a summation of the 
evidence).
        2. Proper Response to Defense Counsel’s Argument 
        Harris also complains that the State attacked him over the shoulders of 
his counsel by interjecting inflammatory comments that were outside the record 
during rebuttal at the guilt-innocence stage of trial. However, the State 
maintains that the comments were proper as a response to Harris’s closing 
argument.
        During closing arguments, the defense revisited its contention that Phillips 
impermissibly discussed the case with Rodriguez after the Rule was invoked 
based on the following comments: 
[H]ere we have an agent of the State going and violating the
Judge’s order and talking to him about the case when the Judge
instructed him to only talk to the lawyers. Yet we have this agent
of the State going and talking to him. 
 
And, by the way, the agent of the State works for the State. 
He’s paid by the State to prosecute and convict people. He’s 
never, ever testified in his 20 something years of experience on 
behalf of an accused citizen. 

The defense also intimated that both Hayes and Durkin were motivated to
testify favorably for the State because they did not want to anger the State and
risk probation revocation.



        Thereafter, on rebuttal, the prosecutor made the following complained-of 
comments in reference to the defense’s closing argument: 
[PROSECUTOR]: . . . The first thing I want to say is that
[defense counsel] wants you to believe that we’ve called Ms.
Hayes up here, told her to lie or we’re going to revoke a deferred
adjudication on a theft by check case.
 
This isn’t a game. This is real life. We’re not up here 
prosecuting someone and trying to get people to come up and lie. 
 
They didn’t tell Brendan Durkin to come up here, if you don’t 
tell them this story and lie, we’re going to revoke your probation. 
We subpoenaed him to come up here and tell how he remembers 
things happening that time. 

                When I took this job, I took an oath to see that justice is done. 
 
[DEFENSE COUNSEL]: Objection, argument outside the 
record. It’s also inflammatory. 
 
THE COURT: I’ll sustain the objection. 
 
[DEFENSE COUNSEL]: And I’ll ask the jury to be instructed 
to disregard that comment. 
 
THE COURT: Please disregard the last comment by the 
prosecutor.
 
[DEFENSE COUNSEL]: And I will further move for a mistrial. 
 
THE COURT: Denied. 
 
        [PROSECUTOR]: [Defense Counsel] has impugned my 
integrity as a prosecutor.
 
[DEFENSE COUNSEL]: Objection. That’s argument outside 
the record. It’s prejudicial and inflammatory. 
 
THE COURT: Overruled. 
 
[DEFENSE COUNSEL]: And it’s also attacking my client over 
the shoulders of counsel, and I object to it on that basis. 
 
THE COURT: Overruled. 
 
[PROSECUTOR]: He insinuates to me that our investigator, 
Tim Phillips, was violating the Judge’s orders. He was not violating 
the Judge’s orders. The Judge let him testify. [Emphasis added]. 
        The State may not strike at a defendant over the shoulders of his counsel 
or accuse defense counsel of bad faith or insincerity during argument. Wilson 
v. State, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996), abrogated on other 
grounds by Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002). Uninvited 
and unsubstantiated accusations of misconduct directed at a defendant’s 
attorney are manifestly improper because they serve to inflame the minds of the 
jury to the defendant’s prejudice. McMurrough v. State, 995 S.W.2d 944, 947 
(Tex. App.—Fort Worth 1999, no pet.). A prosecutor runs a risk of improperly 
striking a defendant over the shoulder of counsel when the argument personally 
impugns opposing counsel’s character. Mosley, 983 S.W.2d at 259. It is 
manifestly improper and prejudicial to the defendant for a prosecutor to contrast 
the ethical obligations of prosecutors with those of defense attorneys. Id. at 
258. 
        While defense counsel is protected from unwarranted attack by the 
prosecution, the prohibition “does not create a sanctuary to which defense 
counsel may retreat with immunity and thereby deny the prosecutor the right 
to reply to counsel’s argument.” Stokes v. State, 506 S.W.2d 860, 864 (Tex. 
Crim. App. 1974). Therefore, a prosecutor is entitled to respond to an 
argument by defense counsel that suggests impropriety on the part of the 
State. See Lange v. State, 57 S.W.3d 458, 467 (Tex. App.—Amarillo 2001, 
pet. ref’d) (holding that prosecutor’s reference to having taken an oath to 
uphold justice was permissible response to defense counsel’s suggestion that 
prosecution had improperly coached witness); Sandoval v. State, 52 S.W.3d 
851, 858 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (holding that it was 
permissible for the prosecutor to respond to defense counsel’s suggestion that 
the prosecution manipulated the testimony of a witness). If a defense 
argument goes outside the record, the “invited argument rule” permits a 
prosecutor to respond so long as the prosecutor’s argument does not exceed 
the scope of the invitation. Johnson v. State, 611 S.W.2d 649, 650 (Tex. 
Crim. App. [Panel Op.] 1981). 
        When the trial court sustains an objection and instructs the jury to 
disregard but denies a defendant’s motion for a mistrial, the issue is whether 
the trial court erred in denying the mistrial. Faulkner v. State, 940 S.W.2d 308, 
312 (Tex. App.—Fort Worth 1997, pet. ref’d) (op. on reh’g). Its resolution 
depends on whether the trial court’s instruction to disregard cured the 
prejudicial effect, if any, of the improper argument. Id. Generally, an 
instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 
532 U.S. 944 (2001). In assessing the curative effect of the court’s instruction 
to disregard, the correct inquiry is whether, in light of the record as a whole, 
the argument was extreme, manifestly improper, injected new and harmful facts 
into the case, or violated a mandatory statutory provision and was thus so 
inflammatory that the instruction to disregard was ineffective. Wesbrook, 29 
S.W.3d at 115-16. If the instruction cured any prejudicial effect caused by the 
improper argument, a reviewing court should find that the trial court did not err. 
Faulkner, 940 S.W.2d at 312. Only if the reviewing court determines that the 
instruction was ineffective does the court go on to determine whether, in light 
of the record as a whole, the argument had a substantial and injurious effect or 
influence on the jury’s verdict. Tex. R. App. P. 44.2(b); King v. State, 953 
S.W.2d 266, 271 (Tex. Crim. App. 1997). 
        In the present case, Harris contends that the prosecutor’s reference to 
having taken “an oath to see that justice is done” constituted a strike over the 
shoulders of his counsel. As noted above, the record reflects that the trial 
court sustained his objection and asked the jury to disregard the comment, but 
denied his request for a mistrial. The prosecutor’s comment appears to be a 
proper response to the defense counsel’s suggestion that the State improperly 
motivated Hayes and Durkin to testify for the State. However, even assuming 
that the prosecutor’s comment was improper, any prejudicial effect was cured 
by the trial court’s instruction to disregard. 
        Harris also complains that the prosecutor’s comment, “[Defense counsel] 
has impugned my integrity as a prosecutor,” was an improper attack over the 
shoulders of his counsel. The complained-of comment was a response to the 
defense counsel’s suggestion that Phillips, an investigator for the District 
Attorney’s office and a witness for the State, intentionally violated the trial 
court’s orders by discussing the case with Rodriguez. The record demonstrates 
that Phillips was only called to testify as a rebuttal witness, and after overruling 
Harris’s objection to Phillip’s alleged violation of the Rule, the trial court allowed 
him to testify. The record contains no evidence that Phillips acted improperly 
by talking with Rodriguez. Therefore, it was proper for the prosecutor to 
respond to the defense’s suggestion of impropriety by the State. See Sandoval, 
52 S.W.3d at 858. 
        3. Proper Plea for Law Enforcement 
        Finally, Harris complains that the State impermissibly asked the jury to 
send a message to the community by finding him guilty based on the following 
exchange:
[PROSECUTOR]: . . . As jurors in this case, you represent the
community. You tell the Defendant, send a message to the
community-- 
 
[DEFENSE COUNSEL]: I’ll object to that. I‘ll object to that as 
calling for the community standards to find this person guilty. It’s 
improper argument. 

                THE COURT: Overruled. 
 
[PROSECUTOR]: Your verdict sends a message to the 
community, and it sends a message to this Defendant about what 
kind of conduct-- 
 
[DEFENSE COUNSEL]: I’ll object to that as calling for 
community expectations to find a person guilty. It’s improper jury 
argument.

                THE COURT: Overruled. 

The State, however, contends that the aforementioned argument was a proper
plea for law enforcement.
        A prosecutorial argument is improper if it induces the jury to reach a 
particular verdict based upon the demands, desires, or expectations of the 
community. See Cortez v. State, 683 S.W.2d 419, 421 (Tex. Crim. App. 
1984) (holding improper the argument, “Now, the only punishment that you can 
assess that would be any satisfaction at all to the people of this county would 
be life.”); Mata v. State, 952 S.W.2d 30, 33 (Tex. App.—San Antonio 1997, 
no pet.) (holding improper the argument, “So I ask you, this is a hard decision 
that you have to make, but I will tell you on behalf of the State of Texas, an 
aggravated sexual assault such as this, probation is not what this community 
and what the State would want.”). However, mere reference to “the 
community” does not constitute an improper appeal to community 
expectations. Rodriguez v. State, 90 S.W.3d 340, 365 (Tex. App.—El Paso 
2001, pet. ref’d). An argument constitutes a proper plea for law enforcement 
if it urges the jury to be the voice of the community, rather than asking the jury 
to lend its ear to the community. Cortez, 683 S.W.2d at 421. Thus, a 
prosecutor’s request that the jury “represent the community” and “send a 
message” falls within the parameters of proper argument as a plea for law 
enforcement. See Goocher v. State, 633 S.W.2d 860, 864 (Tex. Crim. App. 
[Panel Op.]) (holding proper the argument, “I’m asking you to enforce it. I am 
asking you to do what needs to be done to send these type of people a 
message to tell them we’re not tolerating this type of behavior in our county.”), 
cert. dismissed, 459 U.S. 807 (1982); Barcenes v. State, 940 S.W.2d 739, 
749 (Tex. App.—San Antonio 1997, pet. ref’d) (holding proper the argument, 
“You know, you’re here because you have been chosen by the community to 
make the decision, and that’s it . . .--don’t send a message to the community 
that you’re going to believe--“); Caballero v. State, 919 S.W.2d 919, 924 (Tex. 
App—Houston [14th Dist.] 1996, pet. ref’d) (holding proper the argument, 
“[J]urors are sick and tired of this. Jurors are tired of crime because jurors such 
as yourself are members of the community you represent. You represent the 
community.”) 
        In the present case, the prosecutor’s argument did not pressure the jury 
to reach a particular verdict based upon the demands, desires, or expectations 
of the community. On the contrary, the prosecutor argued that the jury 
represented the community and asked the jury to send a message by its verdict. 
The complained-of argument properly asks the jury to act as the voice of the 
community, and therefore, it constitutes a proper plea for law enforcement. 
Accordingly, we hold that the trial court did err by overruling Harris’s objection 
to the argument. We overrule Harris’s third point. 
VI. Conclusion
        Having overruled Harris’s three points, we affirm the trial court’s 
judgments. 
 
                                                  SUE WALKER 
                                                  JUSTICE

PANEL F:   LIVINGSTON and WALKER, JJ.; and SAM J. DAY, J. (Retired, 
Sitting by Assignment). 
 
PUBLISH
 
DELIVERED: November 20, 2003