In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00054-CR


______________________________




DAVID DUCK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 04F606-102




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 David Duck was convicted by a jury of possession of more than 200 grams but less than 400
grams of a prohibited substance (methamphetamine) and assessed a forty-year sentence, from which
he now appeals. 

 Duck's appeal raises seven points of error, each of which is discussed below.

1. INSUFFICIENT EVIDENCE

 Duck's first point of error on appeal contends that the evidence as presented was legally and
factually insufficient to sustain the conviction. 

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, we view all the evidence in a neutral light and
determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly
wrong and manifestly unjust or whether the great weight and preponderance of the evidence is
contrary to the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also
Johnson, 23 S.W.3d at 7; Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 At trial, it was shown that when the peace officers entered Duck's home in a raid after
obtaining a search warrant, Duck was seated on a toilet in which plastic bags containing
methamphetamine were found floating in the bowl; Duck was eating a meal which he had prepared
in the kitchen. The officers conducting the search testified that the strong smell of a
methamphetamine laboratory permeated the house, particularly in the kitchen. Paraphernalia
ordinarily employed in the use of methamphetamine was within the house as well. Duck admitted
that the house belonged to him and that he resided there but said that he was unaware that there was
a methamphetamine laboratory (which contained the bulk of the methamphetamine for which he was
charged) in the storage area of his garage. He also voiced ignorance about the source of the drugs
found in the plastic bags in the toilet upon which he had been seated. The only person present with
Duck in the house was Bobby Taylor, Duck's neighbor; they had been clearing a common fence row
between their properties. Overall, it would appear that there was sufficient evidence presented for
the jury to reasonably conclude that the methamphetamine found in Duck's house belonged to him
and that he was in possession of the methamphetamine. 

 Using the standards set out above, we find that there was sufficient evidence upon which a
jury could find Duck guilty of the offense with which he had been charged. Accordingly, we reject
the first point of error.

2. EXTRANEOUS OFFENSES AND CHARACTER EVIDENCE

 Duck complains that there were several instances when evidence of extraneous crimes,
wrongs, or acts was admitted for no other reason than to demonstrate that Duck possessed poor
character. He maintains that such extraneous issues tainted the jury's opinion of him and caused his
conviction. 

 Because there were no objections raised to most of these proffers, it is beneficial to examine
the circumstances under which we are to review the admission of objectionable evidence. 

 As required by Tex. R. App. P. 33.1, and as stated in Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002):

 To preserve error for appellate review, the complaining party must make a specific
objection and obtain a ruling on the objection. Broxton v. State, 909 S.W.2d 912,
918 (Tex. Crim. App. 1995). In addition, the objection must be made at the earliest
possible opportunity. Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991),
cert. denied, 502 U.S. 870, 116 L. Ed. 2d 162, 112 S. Ct. 202 (1991). Finally, the
point of error on appeal must comport with the objection made at trial. Thomas v.
State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

 The first mention of extraneous offenses about which Duck complains involves evidence of
a search of Duck's house pursuant to a search warrant during 2002, this search having resulted in
peace officers having discovered methamphetamine and a methamphetamine laboratory in Duck's
house. Before this evidence was submitted, Duck had elected to testify on his own behalf and the
following exchange took place while being examined by his attorney:

 Q Do you know how to manufacture methamphetamine?

 A Have no idea.

 Q You heard the explanation of Officer Martin this morning. Right?

 A Uh-huh.

 Q Have you ever participated in a cook?

 A No.

 Q Do you know the recipe for a cook?

 A No.


 The State responded by introducing evidence from Lance Hall, a peace officer, of the search
conducted at Duck's home in 2002. That search, as in this instance, uncovered a methamphetamine
laboratory on the premises. The most striking difference between the two searches was that, in the
2002 search, the methamphetamine lab had been found in a bedroom; in the search conducted in
connection with this charge, the methamphetamine lab was found in Duck's storage space off of the
garage. There was no mention in Hall's testimony of any arrest of Duck or of charges having been
brought against Duck as a result of this 2002 search at that time (although Duck testified rather
generally that he had been charged, but the case never came to trial). There was no objection lodged
to this evidence by Duck's retained counsel and the error was, therefore, waived. Even if an
objection had been made, there was ample reason to permit this testimony to be admitted. By
maintaining that he did not know how to manufacture methamphetamine, it was permissible for the
State to rebut this statement by the introduction of evidence of circumstances in which Duck is
shown to have been familiar with the process, thereby impeaching his testimony. 

 Another instance about which Duck complains on appeal is that the State also made reference
to "a magazine featuring women without clothes" and other material which was (in the opinion of
the arresting officer) "pornography." (1) The mention of this sexually-explicit material elicited an
objection from Duck's counsel as to relevancy, which objection was overruled. Judging from the
testimony elicited by the State after it announced that it would tie its relevance to the case being
heard, the relevance for this proffer was the explanation by the officer that it is common for people
using methamphetamine to be in possession of sexually-explicit material. The connection between
the desire to view magazines of nude photographs and the use of methamphetamine appears tenuous,
and the market for these publications seems to be much broader than just the illicit-drug-using world;
the real underlying purpose of the mention of these photographs would appear to be to cast Duck in
an unfavorable light with the jury. Nevertheless, an appellate court reviews a trial court's decision
to admit or exclude evidence under an abuse of discretion standard. Burden v. State, 55 S.W.3d 608
(Tex. Crim. App. 2001); Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). An
appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of
reasonable disagreement. Even though objection was made of the first introduction of evidence of
"pornography, " another witness, Clay McClure, testified again about this matter without objection
from Duck's counsel, thereby failing to preserve any error to its admission into evidence. (2) 

 There were several other instances of possibly inadmissible evidence which was adduced at
trial about which Duck complains on appeal:

 (a) There was evidence of the fact that a pistol was likewise found on the premises; as
with the photographs, the gun bore no relationship to the offense with which Duck was charged. 
There was no evidence presented that Duck was unlawfully in possession of it.

 (b) Evidence was given of a 1994 incident when Duck was stopped for a traffic violation
and was arrested for an outstanding warrant issued by the State of Arkansas. The witness, Coy
Murray, testified regarding the arrest and stated that a search of Duck's vehicle revealed the presence
of over twelve grams of methamphetamine. He stated that this case had not gone to court. 

 (c) Duck was questioned about his failure to pay income taxes and the fact that there was
an Internal Revenue Service lien upon his home and other matters concerning his personal financial
affairs.

 (d) The State questioned Duck about a domestic disturbance call made at the Duck home
shortly before the trial began.

 In none of these circumstances did Duck raise any objection to their admission at the time
of trial. Typically, appellate courts will not consider any error that counsel for the accused could
have called, but did not call, to the attention of the trial court at a time when such error could have
been avoided or corrected by the trial court. Wright v. State, 28 S.W.3d 526 (Tex. Crim. App. 2000);
Ex parte Crispen, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989). Texas rules require defendants to
object at trial in order to preserve an error for review on appeal. Tex. R. App. P. 33.1(a). As to
evidence in particular, the law is that error may not be predicated upon a ruling which admits or
excludes evidence unless a substantial right of the party is affected, and in case the ruling is one
admitting evidence, a timely objection or motion to strike appears of record, stating the specific
ground of objection, if the specific ground was not apparent from the context. Saldano v. State, 70
S.W.3d 873, 886-87 (Tex. Crim. App. 2002). 

 Since no effort was made by Duck to call any error to the attention of the trial court, we will
not now consider them. 

3. CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

 Much of the basis for the claim of ineffective assistance of counsel rests on the failure of
Duck's trial counsel to raise objections as already discussed. In addition to those above, Duck raises
such things as the failure of Duck's trial counsel to request a charge on a lesser-included offense, to
call a witness which might testify that the volume of methamphetamine would have been much less
than the 200-plus grams had the processing of the methamphetamine been completed, to the failure
to object to the State's reopening of the case to permit it to introduce the jars which constituted the
methamphetamine laboratory, the failure to file motions for discovery or suppression, the failure to
file a pretrial request that Duck be considered for community supervision, and other matters. 

 The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in Hernandez v. State,
726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on this claim, an appellant must prove by
a preponderance of the evidence (1) that his counsel's representation fell below an objective standard
of reasonableness and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S.
at 687; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, an
appellant must prove that his attorney's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for his attorney's deficiency,
the result of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000). 

 Under this standard, a claimant must prove that counsel's representation so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as having produced
a just result. Strickland, 466 U.S. at 688, 694.

 Our review of counsel's representation is highly deferential; we indulge a strong presumption
that counsel's conduct falls within a wide range of reasonable representation. Strickland, 466 U.S.
at 689; Tong, 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of
counsel at trial, nor will the fact that another attorney might have pursued a different course support
a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That
another attorney, including appellant's counsel on appeal, might have pursued a different course of
action does not necessarily indicate ineffective assistance. Harner v. State, 997 S.W.2d 695, 704
(Tex. App.--Texarkana 1999, no pet.).

 This two-pronged test is the benchmark for judging whether counsel's conduct so undermined
the proper functioning of the adversarial process that the trial cannot be relied on as having produced
a reliable result. McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992).

 Absent both showings, an appellate court cannot conclude that the conviction resulted from
a breakdown in the adversarial process that renders the result unreliable. Ex parte Menchaca, 854
S.W.2d 128, 131 (Tex. Crim. App. 1993). An appellant bears the burden of proving by a
preponderance of the evidence that counsel was ineffective. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999).

 "To establish ineffective assistance of counsel, the appellant would have been required to
prove, among other things, that his trial counsel's actions were not the result of 'sound trial strategy.'" 
Saldano, 70 S.W.3d at 885.

 Duck's trial counsel seems to have had a strategy which rested very strongly on the
recantation of the "reliable informant" for the search warrant which precipitated the raid and arrest;
the informant said at trial that she knew that the methamphetamine lab had been put in the storage
area of Duck's house without Duck's knowledge. This strategy may well have taken the posture that
Duck, while not a choir boy, had simply been the subject of planted evidence and, while he admitted
that he had used methamphetamine, this particular cache simply was not his. There is nothing to
suggest that Duck was eligible for consideration for community supervision; there is no evidence that
Duck's trial counsel had been denied access to the information which a motion for discovery would
have revealed. Given that the "pornographic" photographs were never introduced (except for the one
magazine which is revealed in the photograph of the pistol found on the premises), there was nothing
to suggest that this was relevant evidence which would find its way into trial. 

 On appeal, it is pointed out that Duck's trial counsel failed to file motions for discovery or
other pretrial motions. However, it is not demonstrated or even alleged that any such activity by
Duck's trial counsel would have revealed any information which he did not already possess, would
have affected the conduct of the trial, or would have changed the results which were finally reached. 

 Many of the complaints which Duck now alleges were examples of ineffective trial counsel
are contained in a virtual laundry list of things which were not done; however, the appellant's brief
does not specify what is now alleged to have been the proper course of action for trial counsel to
have taken. For instance, he claims that trial counsel should have made a request for an inclusion
of a lesser-included offense in the jury charge, but leaves to the speculation of this Court as to the
lesser-included offense which might have been requested to have been placed in the jury charge. If
a point of error is inadequately briefed, we will not address it. Vuong v. State, 830 S.W.2d 929 (Tex.
Crim. App. 1992). We cannot speculate beyond the record provided; rather, a reviewing court must
presume that the actions were taken as part of a strategic plan for representing the client. Young v.
State, 991 S.W.2d 835, 837-38 (Tex. Crim. App. 1999).

 Duck also now complains of a failure of trial counsel to have moved for a directed verdict
at the conclusion of the State's case. An instructed (or directed) verdict is a challenge to the legal
sufficiency of the evidence. Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In this
case, the evidence presented to the jury supported the State's version of the case and there would
have been no use to make such an obviously fruitless motion. Therefore, an instructed verdict would
have been improper and counsel was not ineffective for failing to do a useless thing. "The law does
not require a useless thing to be done." Allen v. State, 552 S.W.2d 843, 846 (Tex. Crim. App. 1977).

 Looking at this matter after the fact and in retrospect, it is much easier to find errors in
judgment and instances in which the appellate counsel's participation in the trial would have been
much different from the trial counsel's. However, that ability to review from outside the arena and
from the perspective of the future is not the standard for the effectiveness of counsel. The burden
on a showing of ineffective assistance of counsel is understandably onerous.

 Duck has failed to meet the standards for the proof of ineffective counsel and we overrule
this point of error.

4. FAILURE TO INQUIRE AS TO RELATIONSHIP OF JUROR TO WITNESS

 After the jury had been sworn and empaneled and during Duck's opening statement, one of
the jurors, Clara Clem, interrupted, obtaining the attention of the court; the following exchange
ensued:

 JUROR CLARA CLEM: Well, I didn't remember a name that was
mentioned yesterday was Todd Martin, and I know Todd Martin, but I didn't know --.


 THE COURT: Well, let's -- we'll take that up in just a moment. Okay?

 

 JUROR CLARA CLEM: Okay. Well, I didn't want to go too far
before -- .

 

 THE COURT: That's fine. Just -- I'm going to let Mr. Lee finish his opening
statement and then we'll address that.


 Duck's trial counsel then completed his opening argument, and the following discussion
immediately followed:

 THE COURT: Could the attorneys approach?

 

 (Bench conference)

 

 THE COURT: As I remember, Todd Martin's name wasn't even
mentioned yesterday. Is that right?

 

 [THE STATE]: No.


 THE COURT: So I don't think that raises to the point of -- .

 

 [COUNSEL FOR DUCK]: I don't know what Todd could do that would
make -- .

 

 THE COURT: Yeah, so I don't think there's an issue that exists there.

 

 [THE STATE]: I don't see how it could, Judge.


 THE COURT: All right.

 To commence, the court was correct in its recollection that the name of Todd Martin, one of
the witnesses, was not mentioned during voir dire. It is not shown whether this omission was
intended. In either case, Duck now maintains it was the duty of the court to have inquired into the
relationship of the witness and the juror.

 Nothing here shows that there was any relationship between Juror Clem and Martin which
led to an adverse impact on Duck and the trial of his case. No one chose to inquire into the nature
of the relationship and, given the evidence before this Court, it is just as likely that Juror Clem had
an adverse opinion of Martin as it is likely that she had a favorable opinion of him.

 It is the duty of Duck to have inquired about the relationship which existed and to have
inquired at the proper time (during voir dire) concerning this subject. Even if a juror would have
been disqualified or subject to challenge for cause, a reversal of a conviction based on the issue of
a disqualified juror can only be granted if (1) the defendant raises the disqualification before the
verdict is entered; or (2) the disqualification was not discovered or brought to the attention of the
trial court until after the verdict was entered and the defendant makes a showing of significant harm
by the service of the disqualified juror. Tex. Code Crim. Proc. Ann. art. 44.46 (Vernon 2006). 

 Here, there has been no showing that Juror Clem was disqualified from serving on the jury
which convicted Duck; there is no showing that she possessed bias or prejudice either in favor of or
against Duck or the State. Even if it had been the duty of the court to have inquired about the
relationship between Juror Clem and Martin (which it was not), Duck has made no showing of
harm--either significant or insignificant.

 This point of error is overruled.

5. IMPROPER JURY ARGUMENT

 The State apparently attempted to elicit testimony from Officer Murray which would identify
a former assistant district attorney who had been assigned the case involving Duck's 2002 arrest but
failed to do so. Ignoring that failure to establish the identity of the one-time prosecuting attorney or
whatever else he intended to show by the revelation of that name, on summation, on final arguments,
the State said, "The district attorney that was charged with the responsibility of prosecuting those
first two cases didn't do it, and as a result, he's not a part of this office anymore."

 Duck objected, pointing out that this evidence was outside the record and was, therefore,
improper argument. The Court responded with the noncommittal, "Let's move it along." Duck did
not press further for a ruling on the objection and received none. As mentioned previously, Tex. R.
App. P. 33.1 makes certain requirements at the time of trial for the preservation of error before it can
be considered on appeal. Wilson, 71 S.W.3d at 349. Duck did not preserve the error for appeal. 

 Accordingly, this point of error is overruled.

6. IMPROPER CROSS-EXAMINATION OF DEFENSE WITNESS

 Don Wild was called by Duck as a witness. After Wild had testified that he overheard a
conversation between Carlene Carter and Joanna Shope (the informant upon whose tip the search
warrant had been issued) wherein they discussed Duck, the State began to cross-examine Wild. 
Almost immediately, the State first elicited the information that Wild had been charged (but not yet
convicted) of manufacturing a controlled substance and that he had been found guilty of receiving
stolen property, for the possession of a controlled substance, and for the unauthorized use of a motor
vehicle. None of these charges related to the offense with which Duck was charged. 

 The only objection lodged by Duck to the recitation of the charges related to the spreading
out of a computer printout of Wild's "rap sheet," where Duck's counsel objected to the "courtroom
antics" of the State. There was no objection lodged to the scope of the inquiry or to its relevance.

 It is improper to impeach a witness on an immaterial or collateral matter. See Flannery v. 
State, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984); Williams v. State, 542 S.W.2d 131, 138 (Tex.
Crim. App. 1976); Garza v. State, 18 S.W.3d 813 (Tex. App.--Fort Worth 2000, pet. ref'd).

 However, since there was no objection lodged to the improper inquiry into Wild's quite
extensive criminal history, no opportunity was provided to the trial court to rule on its relevance. 
It is clear that a failure to object in a timely and specific manner during trial will waive error in the
admission of evidence. Little v. State, 758 S.W.2d 551, 563 (Tex. Crim. App. 1988); Crocker v.
State, 573 S.W.2d 190 (Tex. Crim. App. [Panel Op.] 1978). 

 No objection having been made, there was no error on the part of the trial court in permitting
the cross-examination to continue.

7. FAILURE TO CAUSE TRANSCRIPTION OF READING OF JURY CHARGE

 Duck points out that the trial court failed to require the court reporter to transcribe the portion
of the trial which included the reading of the charges in either the guilt/innocense phase or the
punishment phase of the trial.

 Duck is correct about the requirement that a court reporter must: "unless excused by
agreement of the parties, attend court sessions and make a full record of the proceedings." See Tex.
R. App. P. 13.1(a). The record reveals no evidence that the reading of the charges was transcribed,
nor any agreement by the parties to waive this transcription. Plainly, this was error but no objection
was lodged to it. (3)

 However, this Court has dealt with this identical issue previously in Brossette v. State, 99
S.W.3d 277 (Tex. App.--Texarkana 2003, pet. dism'd, untimely filed), and found that, in the
absence of an objection regarding the failure to have the court reporter transcribe the reading of a
charge, any error was waived; this Court further observed that, even if the error had not been waived,
it was not reversible error because it did not affect the substantial rights of the party. The discussion
in Brossette is made in depth and is precisely on point (id. at 285), and its substance will not be
repeated here. This point of error is overruled.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: February 7, 2007

Date Decided: April 3, 2007


Do Not Publish

1. The photograph to which the State was making reference at that time showed a pistol and
a magazine which would likely be available at almost any convenience store.
2. To preserve error for appellate review, a party objecting to evidence must renew that
objection each time the evidence is offered. Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App.
2003); Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). There are two exceptions to
this rule, those being (a) when a running objection is obtained and (b) when the court, out of the
jury's presence, hears and overrules objections to evidence. Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim. App. 1991). Neither of those occurred in this case. Any error in the admission of
evidence is cured where the same evidence comes in elsewhere without objection. Valle, 109
S.W.3d at 509; Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). 
3. As a practical matter, so long as it was, indeed, the charge which was read, what possible
damage would rise to a defendant here? The written charges are included in the court's transcript,
and there should be nothing in those charges which were not read to the jury. Certainly, unless the
court were to read something other than the charge, its transcription would do little other than inflate
the reporter's record.